Michael A. Jones, State Bar #27311
Philip J. Giles, State Bar #30340
Cody D. Vandewerker, State Bar #33385
David B. Nelson, State Bar #34100
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email  mjones@allenbarneslaw.com
          pgiles@allenbarneslaw.com
          cvandewerker@allenbarneslaw.com
          dnelson@allenbarneslaw.com
*Attorneys for Debtors*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SILVERADO STAGES INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 2:18-bk-12203-MCW<br>(Jointly Administered) |
| This filing applies to:<br><br>☒ ALL DEBTORS<br>☐ SILVERADO STAGES INC.<br>☐ SILVERADO CHARTER SERVICES, LLC<br>☐ MICHELANGELO LEASING INC.<br>☐ SILVERADO STAGES SC, LLC<br>☐ SILVERADO STAGES CC, LLC<br>☐ SILVERADO STAGES NC, LLC<br>☐ SILVERADO STAGES NV, LLC<br>☐ SILVERADO STAGES AZ, LLC | Case No. 2:18-bk-12203-MCW<br>Case No. 2:18-bk-12205-DPC<br>Case No. 2:18-bk-12207-BKM<br>Case No. 2:18-bk-12209-MCW<br>Case No. 2:18-bk-12210-MCW<br>Case No. 2:18-bk-12213-EPB<br>Case No. 2:18-bk-12215-BKM<br>Case No. 2:18-bk-12218-EPB<br><br>**DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT AMENDED DISCLOSURE STATEMENT DATED APRIL 2, 2019** |

Silverado Stages, Inc., a Wyoming corporation; Silverado Charter Services, LLC, a California limited liability company; Michelangelo Leasing Inc., an Arizona corporation; Silverado Stages SC, LLC, a California limited liability company; Silverado Stages CC, LLC, a California limited liability company; Silverado Stages NC, LLC, a California limited liability company; Silverado Stages NV, LLC, a Nevada limited liability company; and Silverado Stages AZ, LLC, an Arizona limited liability company (collectively, the "**Debtors**") with the full support of the court-appointed Official Committee of Unsecured Creditors ("**Committee**" and

{00148533.21}

with the Debtors, the "**Proponents**") hereby submit this *Debtors and Official Committee of Unsecured Creditors' Joint Amended Statement Dated April 2, 2019* ("**Disclosure Statement**") to assist Creditors in making informed decisions when voting on the *Debtors and Official Committee of Unsecured Creditors' Joint Amended Plan Dated April 2, 2019* ("**Plan**"), attached hereto as **Exhibit A**. This Disclosure Statement amends and replaces the *Debtors' Disclosure Statement Dated February 5, 2019* [ECF No. 548].

The Debtors prepared the Disclosure Statement and Plan with the Committee's assistance and recommendations. The Court appointed the Committee to represent and advance the rights of Unsecured Creditors as an overall Class. The Committee has reviewed the Plan and agrees that it provides the greatest possible return for Unsecured Creditors under the circumstances. **The Committee encourages Creditors holding Unsecured Claims to submit Ballots voting in favor of the Plan.**

**ARTICLE 1**

**INTRODUCTION TO THE DISCLOSURE STATEMENT AND VOTING**

**1.1**     <u>Purpose of the Disclosure Statement</u>

This Disclosure Statement sets forth the following information regarding the Debtors' pre-petition history; their Property; significant events that led to the filing of the Cases; a summary of the Plan, including when and how Creditors will be paid; and a brief discussion of the confirmation process and the voting procedures that must be followed to enable Creditors' votes to be counted. The information provided herein is true and accurate to the best of the Debtors' knowledge.

The primary purpose of this Disclosure Statement is to provide adequate information to those Creditors voting on the Plan so that they may make a reasonably informed decision with respect to exercising their rights to accept or reject the Plan. This Disclosure Statement is not intended to be relied upon for any purpose other than to determine how to vote on the Plan. Nothing contained herein shall be deemed conclusive advice on the tax or other legal effects of the Plan on holders of Claims or interests. **Consult your personal counsel or tax advisor regarding any questions or concerns respecting tax, securities, or other legal consequences of the Plan.**

{00148533-21}

### 1.2 Definitions

Unless otherwise defined herein, terms defined in the Plan, capitalized herein, shall have the same meanings when used in this Disclosure Statement. In addition, unless otherwise defined herein or in the Plan, terms used in this Disclosure Statement shall have the same meanings as in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, or, if not defined, their ordinary meanings.

### 1.3 Authorized Representations

This Disclosure Statement is the only document authorized by the Bankruptcy Court to be used in connection with soliciting votes on the Plan. You should not rely upon any representations or inducements made to secure your acceptance of the Plan other than those set forth herein or in the Plan. **The Bankruptcy Court's approval of this Disclosure Statement does not constitute a certification or ruling by the Court regarding the completeness or accuracy of any statements contained herein. The information contained in this Disclosure Statement came from the Debtors' records and information.** The Debtors have provided the information in good faith but have not retained a certified public accountant to audit the information contained herein nor prepared this information according to generally accepted accounting principles.

This Disclosure Statement is not the Plan. This Disclosure Statement and the Plan should be read together in their entireties before you vote on the Plan. For the convenience of Creditors and interest holders, the Plan is summarized in this Disclosure Statement. In the event of any inconsistency, the Plan controls.

### 1.4 Voting Procedures

To be entitled to vote, a Creditor must have an Allowed Claim that is Impaired under the Plan. Code § 1124 defines whether a Claim is Impaired. To summarize, a Claim is Impaired if the Plan modifies the legal or contractual rights of the Claimant, or if the Plan does not cure and reinstate the legal or contractual rights of the Claimant. A Creditor in a Class that will not receive any distribution under the Plan, under any circumstances, is not entitled to vote in the Class of which it is a member and is deemed to have rejected the Plan.

/ / /

All Creditors or interested parties entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing the Ballot that accompanies this Disclosure Statement, and timely mailing the original Ballot to Debtors' counsel as directed below.

**The Court issued an order requiring that all Ballots accepting or rejecting the Plan be <u>received</u> by close of business on _____ ("Ballot Deadline").** The Ballots should be sent to:

Michael A. Jones
Philip J. Giles
Cody D. Vandewerker
David B. Nelson
ALLEN BARNES & JONES, PLC
1850 N. Central Ave., Suite 1150
Phoenix, AZ 85004
Fax: (602) 252-4712
mjones@allenbarneslaw.com
pgiles@allenbarneslaw.com
cvandewerker@allenbarneslaw.com
dnelson@allenbarneslaw.com

**Your Ballot may not be counted if Debtors' counsel receives it after the Ballot Deadline.** If a Creditor casts more than one Ballot voting the same Claim before the Ballot Deadline, the last Ballot received before the Ballot Deadline will be deemed to reflect the Creditor's intent and thus will supersede any prior Ballot.

**1.5**     <u>**Confirmation of the Plan**</u>

For the Plan to be effective, it must be "confirmed," which means that the Court has approved the Plan. For the Plan to be confirmed, votes by each Impaired Class representing at least two-thirds (2/3) in amount of the Allowed Claims voting in each Class and greater than one-half (1/2) in number of individual Creditors voting in each Class must be submitted in favor of acceptance of the Plan. If the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan.

When confirmed by the Bankruptcy Court, the Plan will bind all Claim holders, whether or not they are entitled to vote or did vote on the Plan, and whether or not they received or retained

{00148533.21}

any distributions or Property under the Plan.

## ARTICLE 2

## THE DEBTORS

### 2.1    History of the Debtors

The Debtors collectively function as a single business known as "Silverado Stages," sharing common operations, ownership, and management. Silverado Stages's operations began in 1987 with a single location in California offering motor coach services. Over the years, Silverado Stages experienced significant success allowing it to grow and expand its operations throughout California and into Arizona and Nevada. As part of its organizational structure, Silverado Stages formed individual limited liability companies to hold various licenses and contracts for its regional operations in northern California, central California, southern California, Nevada, and Arizona. Silverado Stages, Inc. and Silverado Charter Services, LLC, which Silverado Stages Inc. wholly owns, own these individual entities. In its expansion into the Arizona market, Silverado Stages bought Michelangelo Leasing, Inc. ("**Michelangelo**") which Silverado Stages, Inc. wholly owns. Silverado Stages, Inc. and Michelangelo hold substantially all of Silverado Stage's tangible Property. Together, the Debtors' various entities operate as a single unit.

Silverado Stages derived its revenue primarily from transportation and charter services with vehicle rental and sales generating additional revenue. Silverado Stages conducted diverse operations, including charters, local and multi-state over-the-road tours, scheduled fixed routes, contract shuttles, and ADA services. It provided services for the government, the military, business, and private parties. Silverado Stages grew to one of the largest motor coach operators in the United States. On the Petition Date, Silverado Stages owned over 300 passenger vehicles and employed close to 300 people.

### 2.2    Incidents Leading to Bankruptcy Filing

Silverado Stages' financial troubles began shortly after its purchase of Michelangelo in 2016. Silverado Stages moved its headquarters and key staff from San Luis Obispo, California to Phoenix, Arizona. The merged companies substantially underperformed. Additionally,

market conditions drastically increased driver costs while simultaneously decreased transportation service prices. Over the next two years, Silverado Stages attempted to downsize its operations by reducing its workforce and discontinuing unprofitable service routes. Despite infusion of capital from ownership and retention of a restructuring advisor, Silverado Stages could not maintain its financial obligations.

On September 13, 2018, VFS Leasing Co. and Volvo Financial Services, a division of VFS US LLLC (together, "**VFS**") filed a complaint against Silverado Stages seeking $15.6 million in alleged claims and asserted its collateral rights to repossess motor coaches needed for Silverado Stages' operations. With the help of its restructuring advisor, Silverado Stages proposed a repayment schedule to its many secured lenders in a final attempt to avoid bankruptcy. Unfortunately, VFS declined the offer and escalated its efforts to repossess collateral, forcing the Debtors to file bankruptcy in an attempt to save Silverado Stages' operations and preserve its assets for all creditors.

### 2.3    Developments during the Cases

On October 5, 2018, the Debtors filed for relief under Chapter 11 of the Bankruptcy Code, thereby initiating the Cases. On October 12, 2018, the Court ordered the Cases jointly administered under the Lead Case. The Debtors diligently worked to stabilize operations, secure use of cash collateral, negotiate with their secured creditors, and seek new investment, debt, and sale opportunities. The Court approved AB&J's employment as the Debtors' counsel and Matt Foster of Sonoran Capital Advisors, LLC ("**Sonoran Capital**") as the Debtors' Chief Restructuring Officer and Chief Financial Officer. The Court entered further orders allowing the Debtors' operations to continue, including approval of the Debtors' use of cash collateral, payment of wages, and adequate assurance procedures for utility providers. In addition, on December 10, 2018, the Court approved the Debtors' employment of tax accountants for the Estate.

On November 1, 2018, the Debtors employed Dave Mendenhall and Bus Solutions to provide expert analysis regarding depreciation and adequate protection related to the Debtors' numerous secured creditors. Around this time, many of the Debtors' secured creditors sought

relief from the automatic stay, payment of adequate protection, or other relief from the Court. With the help of Bus Solutions, the Debtors worked with their secured creditors with the goal to reach agreements regarding appropriate adequate protection payments. Where they did not need the collateral for reorganization, the Debtors returned certain collateral or sold the collateral. On December 3, 2018, the United States trustee appointed the Official Committee of Unsecured Creditors ("**Committee**"), and the Court approved employment of Perkins Coie, LLP as the Committee's counsel.

The Debtors' general liability and vehicle insurance expired on January 9, 2019. Based on the information that the Debtors received from their broker and other insurers, any new insurer would require an annual premium much larger than the previous policy's premium, a substantial up-front payment, and a significant payment of cash to serve as collateral to the new insurer. Any new insurer would additionally limit the type of insurance provided. When combined with other material end-of-year expenses that the Debtors would incur if they continue operating their business, the Debtors determined that they were unable to continue operating without an infusion of outside cash that was simply not available.

As stated in the filed Status Report [ECF No. 345] and discussed at the hearings on December 12, 2018 and December 19, 2018, the Debtors determined in their business judgment that it was not feasible to continue their operations. Faced with the regrettable but unavoidable reality, the Debtors determined it was in the best interest of all interested parties to cease operations on December 15, 2018 and immediately commence an orderly wind-down of operations. The Debtors are in the midst of a wind-down that will minimize administrative expenses and maximize the value of estate assets. In that regard, the Court entered an order approving a cash collateral budget that funded the costs and expenses necessary to conduct an orderly wind-down of the Debtors' operations through January 19, 2019 [ECF No. 346].

Since the decision to wind-down, the Debtors and Committee have worked with creditors, including without limitation Western Alliance, and the Court to orderly return and liquidate assets. The Debtors coordinated with their secured creditors to facilitate repossession of collateral through stipulated relief from the automatic stay and abandonment orders. Western

| 1 | Alliance cooperated with the wind down, and in return, Western Alliance received an agreed- |
| 2 | upon path toward recovery of its collateral with the support of both the Debtors and the |
| 3 | Committee. The Debtors also rejected their numerous executory contracts and leases. In |
| 4 | conjunction with rejection of the real property leases and vacating the respective properties, |
| 5 | approximately 900 boxes of corporate records have been transferred to, and temporarily stored |
| 6 | by, counsel for the Committee pending further administration of these Estates. Additionally, the |
| 7 | Debtors abandoned their fully encumbered assets that provided no benefit to the Estate. |
| 8 | On January 9, 2019, the Court authorized Cunningham and Associates, Inc. |
| 9 | ("**Cunningham**") to conduct an auction ("**Auction**") of the Debtors' unencumbered vehicle |
| 10 | assets. The Debtors conducted their Auction from January 18, 2019, through January 23, 2019 |
| 11 | and generated the Auction Proceeds. On January 7, 2019, the Court approved Jeff Post's |
| 12 | employment of TRI Commercial Real Estate ("**TRI**") employment as realtor to market and sell |
| 13 | the Debtors' Sacramento Property. With TRI's help, the Debtors accepted an offer to purchase |
| 14 | the Sacramento Property for $2,720,000. The Court approved the sale of the Sacramento |
| 15 | Property on March 14, 2019 [ECF No. 627]. The sale of the Sacramento Property occurred on |
| 16 | March 15, 2019. From the proceeds of the sale, the Debtors paid the Secured Claims of |
| 17 | McCormick in the value of $717,738 and Coastal in the value of $547,233.35. After the |
| 18 | payment of all associated closing costs and fees, the Debtors received final net proceeds of |
| 19 | $1,271,536.67. |

### 2.4    Former Employee Issues

| 21 | On February 7, 2019, the Debtors amended their Schedule E/F to list all persons |
| 22 | employed by the Debtors at the time operations ceased. ECF No. 553. The amendment |
| 23 | additionally provided these former employees with the proof of claim form and information |
| 24 | regarding how to file a proof of claim to allow such former employees to preserve any potential |
| 25 | Claims they may have against the Debtors. The Debtors' former employees collectively own |
| 26 | approximately 11.5% of Silverado Stages, Inc. through the Employee Stock Ownership Plan, or |
| 27 | ESOP. Prior to the Petition Date, the Debtors' accountants and other financial professionals |
| 28 | prepared annual financial statements evidencing the value of the ESOP. For the 2017 report, the |

Debtors' ESOP professionals determined that the ESOP had no value due to Silverado Stages, Inc.'s insolvency. As a result, the ESOP and the other Equity Interests have no value, and the Plan treats the ESOP interests with all other Class 4 Equity Interests.

### 2.5 Debtors' Liquidation

Unfortunately, without insurance, the Debtors could not sustain their operations. After evaluating their financial condition, the Debtors determined that an orderly liquidation would preserve the greatest value for Creditors. The Debtors' fully encumbered assets have been abandoned or returned to secured creditors. The Debtors liquidated their unencumbered vehicles through the Auction. The Liquidating Trust will collect proceeds from the remaining unencumbered Property for distribution to the Debtors' Creditors. The Debtors have worked closely with the Committee to prepare the Plan that provides the highest possible return for creditors.

## ARTICLE 3

### SUMMARY OF THE DEBTORS' CURRENT FINANCIAL CONDITION

The Debtors' monthly operating reports filed in the Cases and budgets attached to the Cash Collateral Orders provide significant detail regarding the Debtors' financial condition during these Cases. The Debtors will continue to file monthly operating reports with the Bankruptcy Court until they confirm the Plan. Interested parties are encouraged to review the Schedules, Statements of Financial Affairs, and monthly operating reports for more details.

## ARTICLE 4

### DESCRIPTION OF PROPERTY

The Debtors' listed their assets and liabilities as of the Petition Date on their Schedules and Statements of Financial Affairs filed in their respective Cases. As discussed in Article 2 above, the Debtors are liquidating their assets. The Debtors have abandoned or returned their fully encumbered assets to the appropriate Secured Creditors. Through the Auction, the Debtors generated $325,931 in Auction Proceeds with additional unsold vehicles that Cunningham believes will generate approximately an additional $10,000 in sales to interested parties for a total of approximately $335,931. Additionally, with TRI's help, the Debtors recently sold the

Sacramento Property for $2,720,000 yielding net proceeds of $1,271,536.67 after payment of associated Secured Claims and closing costs and fees. The Debtors currently hold free and clear cash in the total amount of approximately $1.6 million.

As of the Petition Date, the Debtors owed Western Alliance the aggregate Indebtedness in the amount of at least $8,268,655 which includes the $7,518,655 under the Alliance term loan and line of credit loan documents plus another $750,000 advanced by Alliance post-petition pursuant to four pre-petition letters of credit (the "**Letters of Credit**"). Repayment of the Indebtedness is secured by, among other things, a valid pre-bankruptcy first-position lien and security interest against, among other collateral: (i) substantially all of the Debtors' personal Property; and (ii) all of the Debtors' pre-petition cash and accounts receivable, which constitutes cash collateral as defined in Code § 363(a).

The Debtors previously agreed in Cash Collateral Orders to replacements liens related to the Cash Collateral. All rights of all parties were reserved regarding the value of the Western Alliance's replacement liens and the amount of, if any, diminution of Western Alliance's collateral. In any event, Western Alliance's replacement liens do not extend the Auction Proceeds, the Sacramento Property Proceeds, the Judgment, and Causes of Action under Chapter 5 of the Bankruptcy Code.

Since the Petition Date and in accordance with the Cash Collateral Orders, the Debtors have paid the amount of $1,444,547 to Western Alliance. The Debtors' remaining accounts receivable total approximately $1,238,127.99, and the Debtors currently hold the additional amount of no more than $56,098 in Cash Collateral. The Debtors are working with Western Alliance and the Committee to determine whether any of the Debtors' remaining assets are not subject to the Alliance Lien or Alliance's replacement liens.

Michelangelo also holds an interest in the Judgment entered in Nevada in the amount of $104,795.31 against MOH Management, LLC and others. Dickinson Wright PLLC ("**DW**") was Michelangelo's pre-bankruptcy counsel related to the Judgment, and DW asserts that DW may hold a lien against the Judgment, however, Nevada law does not support this assertion and no such lien actually exists. The Debtors and Committee are investigating collection options for

{00148533-2}

the Judgment.

**ARTICLE 5**

**POST-CONFIRMATION CONTROL**

On the Effective Date, the Debtors shall cease to exist and the Debtors' remaining Property interests shall be assigned to and vested in the Liquidating Trust subject to the terms of this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall continue liquidation of the Debtors' Property under terms of the Liquidating Trust Agreement attached to the Plan as Exhibit 1. Under Section 4.1 of the Liquidating Trust Agreement, the Liquidating Trustee must discharge his duties in a fiduciary capacity. The Liquidating Trustee may arrange for payment of his reasonable fees and expenses from the Trust Assets as permitted in the Liquidating Trust Agreement. The Liquidating Trust Agreement provides that the Liquidating Trustee will consult with appointed "Creditor Representatives," defined in the Liquidating Trust Agreement, but vests ultimate decision-making authority in the Liquidating Trustee. Upon receipt of a written request from a Creditor Representatives for a determination of a matter within the administration of the Liquidating Trust, the Liquidating Trustee will take such actions as he determines are reasonable to resolve such request. In the event that a Creditor Representative seeks review by the Bankruptcy Court of a determination or action of the Liquidating Trustee, the Liquidating Trustee will respond to, appear on account of, and participate in such proceedings as may be required by the Bankruptcy Court for resolution of such request for review.

**ARTICLE 6**

**SUMMARY OF THE PLAN**

This section contains a brief summary of the Plan, and it is qualified in its entirety by reference to the Plan, which accompanies this Disclosure Statement. **THE PLAN CONTROLS THE RELATIONSHIP BETWEEN THE DEBTORS AND CREDITORS. YOU SHOULD READ THE PLAN IN ITS ENTIRETY PRIOR TO CASTING YOUR BALLOT.**

**6.1**     **Allowed Administrative Claims**

Pursuant to Code § 1123(a)(1), Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. These Claims include, without limitation,

post-petition tax Claims, Professional Fees, approved accounting fees, and any fees due and payable to the United States Trustee. Applications for approval of Administrative Claims must be filed with the Court, and copies must be served upon the Debtor and the Liquidating Trustee unless exempted by applicable law. Any holder of an Administrative Claim that fails to timely file a final application for approval of such Administrative Claim shall be deemed to have waived its Claim, and the Claim will be disallowed. Unless otherwise agreed, the holders of Allowed Administrative Claims shall be paid in full on the Effective Date from the Debtors' unencumbered cash.

### 6.2 Class 1 – Allowed Priority Claims

Class 1 consists of Allowed Claims entitled to priority pursuant to Code § 507(a), unless such Claim qualifies as an Administrative Claim. Unless such Claimant agrees to less favorable treatment, the Liquidating Trustee shall pay each Class 1 Claim in full in order of the priority structure set forth in Code § 507(a). Each Claim of equal or higher priority shall receive payment in full before payment of any Claim entitled to lower priority. To the extent the Liquidating Trustee cannot pay each Claim entitled to equal priority in full at any given time, the Liquidating Trustee shall distribute a *pro rata* share of available funds to Claims of equal priority until the Liquidating Trustee has paid all Class 1 Claims. No prepayment penalty shall apply to the Class 1. Class 1 is not Impaired and deemed to accept the Plan.

### 6.3 Class 2 – Secured Claim of Western Alliance

Class 2 consists solely of the Allowed Secured Claim of Western Alliance. As of the Petition Date, the Debtors owed Western Alliance an Indebtedness in the amount of at least $7,518,655 pursuant to the terms of the Western Alliance Documents and at least $750,000 under the Letters of Credit. No prepayment penalty shall apply to the Class 2. Class 2 is undersecured and shall not accrue interest.

The Allowed Secured Claim of Western Alliance is secured by the Alliance Lien. The Debtors previously agreed in the Cash Collateral Orders to replacements liens related to the Cash Collateral with the parties reserving their rights regarding the value of such replacement liens and any diminution of Western Alliance's collateral, if any. Since the Petition Date and in

accordance with the Cash Collateral Orders, the Debtors have paid the amount of $1,444,547 to Western Alliance. The Debtors' remaining accounts receivable total approximately $1,238,127.99, and the Debtors currently hold the additional amount of no more than $56,098 in Cash Collateral. The Debtors are working with Western Alliance and the Committee regarding the extent of Western Alliance's collateral and asserted liens. Any such unencumbered amounts shall vest in the Liquidating Trust. The Alliance Lien and Cash Collateral do not extend to or include: the Auction Proceeds, the Sacramento Property Proceeds, the Judgment, and Causes of Action under Chapter 5 of the Bankruptcy Code.

The Debtors are continuing to collect and turnover Western Alliance's collateral, subject to existing Cash Collateral Orders. Unless otherwise agreed by Western Alliance and the Liquidating Trustee, on the Effective Date, the Debtors shall turnover to Western Alliance any remaining collateral, if any, subject to the Alliance Lien or Western Alliance's replacement liens. Upon turnover of Western Alliance's collateral, Class 2 shall be deemed satisfied.

Western Alliance shall hold an Allowed Class 3 Claim in the amount of the difference between: (i) the amount of the Indebtedness, plus all attorneys' fees and costs incurred by Western Alliance on and after the Petition Date; and (ii) the value of collateral received by Western Alliance on its Allowed Class 2 Secured Claim. Class 2 is Impaired and entitled to vote on the Plan.

### 6.4 Class 3 – General Unsecured Creditors

Class 3 consists of all Allowed Unsecured Claims that are not entitled to classification in any other Class of Claims. Class 3 includes all deficiency Claims remaining after the return or sale of collateral, including without limitation the deficiency Claim of Western Alliance described in Class 2. After payment of or reservation for Administrative Claims, Class 1 Claims, and the Class 2 Claim, the Liquidating Trustee shall distribute a *pro rata* share of all funds to Class 3 Claimants as available in accordance with the Liquidating Trust Agreement. Class 3 Claims shall not accrue interest. No prepayment penalty shall apply to Class 3. If a Class 3 Claim is not an Allowed Claim prior to the Initial Payment Date, the holder of the Class 3 Claim shall not receive payment until its Claim is Allowed. Class 3 is Impaired and entitled

to vote on the Plan.

### 6.5    Class 4 – Equity Interests

There shall be no distribution on account of Class 4 Equity Interests.  Upon the Effective Date, the Equity Interests, including the ESOP, will be deemed cancelled and will cease to exist. Holders of Equity Interests will receive no distribution under the Plan and therefore are deemed to have rejected the Plan.  Accordingly, Holders of Equity Interests are not entitled to vote.

**ARTICLE 7**

**MEANS TO IMPLEMENT PLAN**

The Plan constitutes a motion for substantive consolidation of the Debtors' liabilities and Property only for purposes of Plan voting and distributions to holders of Allowed Claims. Confirmation of the Plan shall constitute the Bankruptcy Court's order granting of that motion. Substantive consolidation is appropriate where: (1) creditors dealt with the entities as a single economic unit; or (2) the affairs of the debtors are so entangled that consolidation will benefit all creditors. *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 766 (9th Cir. 2000).  Since their inception and merger, the Debtors have jointly operated Silverado Stages as a unified business in their transactions with Creditors.  The Debtors have the same primary Creditors, and their assets truly belong to the unified operating business.    Accordingly, substantive consolidation as provided in the Plan is appropriate.

Substantively consolidating the Debtors' liabilities and Property on the Effective Date: (a) consolidates the Cases into the Lead Case as a single case; (b) consolidates all Estates' Property into the Consolidated Estate only for purposes of Plan voting and distributions to holders of Allowed Claims under the Plan; (c) converts all Claims against any of the Estates into Claims against the Consolidated Estate such that any proof of Claim filed against one or more of the Debtors is deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of Claim for the same Claim filed against more than one Debtor are deemed expunged; (d) disallows, discharges, and eliminates all Intercompany Claims and precludes any distributions under the Plan on account of Intercompany Claims; (e) eliminates and discharges all guarantees by one Debtor of the obligations of any other Debtor or in favor of any other

{00148333-21}

Debtor and precludes any distributions under the Plan on account of Claims based on such guarantees; and (f) for purposes of determining the availability of the right of setoff under Code § 553, treats all Debtors as one consolidated entity so that, subject to the other provisions of Code § 553, debts due to any Debtor may be setoff against the debts of any other Debtor. Substantive consolidation under the Plan does not affect valid, enforceable, and unavoidable liens, except for liens that secure a Claim that is eliminated by virtue of substantive consolidation. Substantive consolidation under the Plan does not create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation. The substantive consolidation contemplated in the Plan does not affect any applicable date for purposes of pursuing Causes of Action, if any. **SUBSTANTIVE CONSOLIDATION UNDER THE PLAN IS STRICTLY FOR THE PURPOSES DESCRIBED IN THE PLAN AND DOES NOT EFFECT A MERGER OR OTHER CONSOLIDATION OF THE DEBTORS.**

### 7.1 The Liquidating Trust

The Plan will be funded from the Liquidating Trust Assets, including among other things: the Auction Proceeds; the Sacramento Property Proceeds; the Judgment; and Causes of Action under Chapter 5 of the Bankruptcy Code. On the Effective Date, the Debtors' Property not previously distributed shall vest in the Liquidating Trust, becoming the Liquidating Trust Assets. The Liquidating Trustee shall administer the Liquidating Trust Assets, prosecute and resolve all Disputed Claims, investigate and pursue Litigation and Causes of Action, and make distributions to the Beneficiaries of the Liquidating Trust. The distributions will be made as provided in the Plan. The Liquidating Trustee shall have the powers and rights described in the Plan and the Liquidating Trust Agreement.

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall constitute a motion pursuant to Code §§ 105, 363, and 365 to affect such. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the

Liquidating Trust Assets, and the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets.

The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Except to the extent definitive guidance from the IRS or a court of competent jurisdiction, including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets as soon as possible after the Effective Date. The valuation shall be used consistently by all parties, including, without limitation: the Trustee, on behalf of the Debtors, the Liquidating Trust, the Beneficiaries, and the Creditor Representatives, for all federal income tax purposes.

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

**7.2     Appointment of the Liquidating Trustee**

The Liquidating Trustee shall be appointed pursuant to the Confirmation Order. From and after the Effective Date, the Liquidating Trustee's professionals may be retained by the Liquidating Trustee without further need for approval by the Bankruptcy Court. All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets, after payment in full of all Allowed Administrative Claims, in accordance with the Liquidating Trust Agreement.

{00148833-2}

Under Section 4.1 of the Liquidating Trust Agreement, the Liquidating Trustee must discharge his duties in a fiduciary capacity. The Liquidating Trustee may arrange for payment of reasonable fees and expenses incurred by the Liquidating Trustee from the Trust Assets as permitted in the Liquidating Trust Agreement. The Liquidating Trust Agreement provides that the Liquidating Trustee will consult with appointed "Creditor Representatives," as defined in the Liquidating Trust Agreement, but vests ultimate decision-making authority in the Liquidating Trustee. Upon receipt of a written request from a Creditor Representatives for a determination of a matter within the administration of the Liquidating Trust, the Liquidating Trustee will take such actions as he determines are reasonable to resolve such request. In the event that a Creditor Representative seeks review by the Bankruptcy Court of a determination or action of the Liquidating Trustee, the Liquidating Trustee will respond to, appear on account of, and participate in such proceedings as may be required by the Bankruptcy Court for resolution of such request for review.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Code § 1123 and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Code §§ 704 and 1106 and Rule 2004 to act on behalf of the Liquidating Trust. The Liquidating Trustee will have the right to, without limitation: (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon, or compromise any Causes of Action; (4) make distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to Claims and prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtors and their Estates with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Chapter 11 Professionals in accordance with the Liquidating Trust Agreement or the Plan, provided, however, that any such compensation shall

{00148533-2:}

be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

### 7.3 Preservation of Rights of Action

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Code § 1123(b)(3), any Litigation and Causes of Action that the Debtors or their Estates may hold against any party shall vest upon the Effective Date in the Liquidating Trust. Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Litigation or Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. Any recoveries therefrom shall remain the sole property of the Liquidating Trust for the Beneficiaries of the Liquidating Trust. Holders of Claims shall have no right to any such recovery.

Unless Litigation or a Cause of Action against a holder of a Claim or other party is expressly waived, relinquished, released, compromised, or settled in the Plan or any final Order, including the Confirmation Order, the Debtors and the Liquidating Trustee expressly reserve such retained Litigation and Causes of Action for later adjudication by the Liquidating Trustee, including, without limitation, Causes of Action not specifically identified or described herein or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel, or laches shall apply to any Litigation or Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order, including the

{00148533-1}

Confirmation Order. In addition, the Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are a defendant or an interested party against any party, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

The Debtors have identified potentially liable parties in **Exhibit B** attached hereto. Regardless of the disclosure of potentially liable parties, any parties to which the Debtors have incurred an obligation, whether on account of services, the purchase or sale of goods, or otherwise, or has received services from the Debtors or a transfer of money or Property of the Debtors, or has transacted business with the Debtors, or leased equipment or Property from the Debtors, should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such party has filed a Proof of Claim against the Debtors in these Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such party's Proof of Claim; (iii) any such party's Claim was included in the Debtors' schedules or other disclosures; (iv) the Debtors or Liquidating Trustee have objected to any such party's scheduled Claim; or (v) any such party's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated.

## ARTICLE 8

## LIQUIDATION ANALYSIS

As a condition to confirmation, Code § 1129(a)(7) requires the Plan to provide that each Creditor either accept the Plan or receive as much under the Plan as such Creditor would receive in a hypothetical Chapter 7 liquidation. The Debtors' Property and liabilities are listed in their schedules and Statements of Financial Affairs filed in their respective Cases, and the Debtors currently hold free and clear cash in the total amount of approximately $1.6 million. The Plan proposes a complete liquidation of the Debtors' remaining Property. An orderly liquidation under the Plan allows the Debtors and the Liquidating Trustee to preserve the maximum value of the Debtors' Property for distribution to Creditors. To the extent pursuit of Litigation or Causes of Actions may generate additional proceeds for distribution to the Consolidated Estate, the Liquidating Trustee may pursue such action to the same extent as a Chapter 7 Trustee. In

addition, the Plan avoids the additional fees and costs which appointment of a Chapter 7 trustee unfamiliar with the Debtors.

The Committee and its counsel are already familiar with the Debtors' assets and Creditors' claims, and are in the best position to choose and work with the Liquidating Trustee to ensure that the Debtors' remaining assets are efficiently liquidated and distributed for the benefit of unsecured creditors. Indeed, in conjunction with the Debtors' rejection of real property leases and expediated turnover of real property, counsel for the Committee agreed to accept and temporarily store approximately 900 boxes of corporate records, including records necessary to investigate and pursue any Litigation or Causes of Action, free of charge. In a conversion to Chapter 7, the Estates would incur costs to transfer and store these voluminous records. The Chapter 11 Professionals and Committee's professionals collectively have hundreds of hours of experience and knowledge of this case, and are in the best position to analyze Claims and Causes of Action. These parties expect to resolve these issues in the months ahead and ensure a smooth transition of the Debtors' unencumbered assets into the Liquidating Trust for the benefit of Creditors. Going forward, both the Liquidating Trustee and a Chapter 7 Trustee would incur professional fees pursuing claims administration and avoidance actions, however, conversion to Chapter 7 will trigger significant administrative costs to transfer and store the voluminous corporate records. As a result, the Plan provides for a distribution to Creditors that exceeds a hypothetical Chapter 7 liquidation because asset values will be maximized and claims administration will be streamlined through the Liquidating Trust.

**ARTICLE 9**

**TAX ISSUES**

Pursuant to Code § 1125(a)(1), the Debtors must provide a discussion of the potential material tax consequences of the Plan to the Debtors and any successors to the Debtors, and a hypothetical investor typical of the holders of Claims or interests in the Cases, that would enable such a hypothetical investor of the relevant Class to make an informed judgment about the Plan. The Debtors need not include such information about any other possible or proposed plan. In determining whether the Disclosure Statement provides "adequate information" as required by

Code § 1125, the Court must consider the complexity of the case, the benefit of additional information to Creditors and other parties in interest, and the cost of providing additional information.

The following discussion summarizes certain considerations that may affect the anticipated federal income tax consequences of the Plan's implementation to Creditors and to the Debtors. It does not address all federal income tax consequences of the Plan nor does it address the state or local income tax or other state or local tax consequences of the Plan's implementation to Creditors or to the Debtors.

This description of the federal income tax consequences of implementing the Plan is based on the Debtors' interpretation of the applicable provisions of the Internal Revenue Code, the regulations promulgated thereunder, and other relevant authority. The Debtors' interpretation, however, is not binding on the Internal Revenue Service or any court. The Debtors have not obtained, nor do they intend to obtain, a private letter ruling from the Internal Revenue Service, nor have the Debtors obtained an opinion of counsel with respect to any of these matters. The discussion below is general in nature and is not directed to the specific tax situation of any particular interested taxpayer. **For these reasons, all Creditors should consult with their own tax advisors as to the tax consequences of implementation of the Plan to them under applicable federal, state, and local tax laws.**

### 9.1 Tax Consequences to the Debtors

In general, the amount of any debt that is partially or totally discharged pursuant to a bankruptcy case is excluded from gross income. Generally, the amount of discharged debt income that is excluded from gross income must be applied to reduce tax attributes. The Debtors' tax attributes are reduced in the following order: (1) net operating losses; (2) general business credits; (3) minimum tax credit; (4) net capital loss and net capital loss carryovers; (5) reduction in tax basis of the Debtors' property (both depreciable and non-depreciable); (6) any passive activity loss and credit carryovers from the taxable year of the discharge; and (7) foreign tax credit carryovers. The Debtors may elect to apply the debt discharge exclusion first to depreciable property and thereafter to the tax attributes in the above-prescribed order.

## 9.2 Tax Consequences to Secured and Unsecured Creditors

Both Secured and Unsecured Creditors may be required to report income or be entitled to a deduction as a result of the implementation of the Plan. The exact tax treatment depends on, among other things, each Claimant's method of accounting, the nature of each Claimant's Claim, and whether and to what extent such Claimant has taken a bad debt deduction in prior taxable years with respect to the particular debt owed to it by the Debtor. **Each Claim holder is urged to consult with his, her, or its own tax advisor regarding the particular tax consequences of the treatment of his, her, or its Claim under the Plan.**

## 9.3 Tax Consequences to the Equity Interest holders

Each Equity Interest holder is urged to consult with his, her, or its own tax advisor regarding the particular tax consequences of the treatment of his, her, or its interest under the Plan.

## ARTICLE 10

## BALLOTING INSTRUCTIONS

Creditors in Classes 2 and 3 are entitled to vote to accept or reject the Plan. GENERALLY, THE PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS. However, if the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan, discussed in Section 12.1 below.

## ARTICLE 11

## MODIFICATION OF PLAN

The Proponents reserve the right to modify the Plan in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

## 11.1 Pre-Confirmation

In accordance with Code § 1127(a), the modification of the Plan may be proposed in writing by the Proponents at any time before its confirmation, provided that the Plan, as thus

{00148533-2\}

modified, meets the requirements of Code §§ 1122 and 1123, and the Proponents comply with Code § 1125.

### 11.2 Post-Confirmation

In accordance with Code § 1127(b), the Plan also may be modified at any time after its confirmation and before its substantial consummation, provided that the Plan as thus modified meets the requirements of Code §§ 1122 and 1123, provided further that the circumstances then existing justify such modification, and the Court confirms the Plan as thus modified under Code § 1129.

### 11.3 Objections

Any holder of a Claim or Equity Interest that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Court for doing so, such holder changes its previous acceptance or rejection.

### 11.4 Effect

Every modification of the Plan will supersede the previous version of the Plan as and whenever each modification is effective. When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void, and unusable by the Proponents or any other party for any purpose whatsoever with respect to any of the contents of such version of the Plan.

### 11.5 Default

If the Debtors or Liquidating Trustee are unable to perform the terms and conditions of the Plan, then it will be in default. Any Creditor may seek to enforce the Plan. **Before doing so, the Creditor must provide notice to the Liquidating Trustee specifying the nature of the alleged default and a 30-day period to cure the default.** Any notice must be in writing and sent via certified mail to the Liquidating Trustee and his counsel at the addresses that will be filed with the Court when the Liquidating Trustee is appointed.

/ / /

/ / /

/ / /

{00148333-1 }

**ARTICLE 12**

**CONFIRMATION, RISKS & RECOMMENDATION**

**12.1     Fair and Equitable Test**

To the extent such requirements are applicable based upon the votes of Creditors, the Plan satisfies the fair and equitable requirements of Code § 1129(b).  With respect to Secured Claims, the Plan provides for all Secured Creditors to retain pre-petition liens and to be paid the full value of their Allowed Secured Claims.  With respect to Unsecured Claims, the Plan provides payment to all Creditors based on the priority scheme set forth in the Bankruptcy Code.  Specifically, the Plan provides payment of Administrative and Priority Claims in the order provided in Code § 507(a) prior to payment of any General Unsecured Class.  In addition, the Plan provides that any Equity Interest holder will not receive a distribution on account of its Equity Interest unless and until all Allowed Claims have been paid in full.

**12.2     Recommendation of the Proponents**

The Debtors have worked closely with the Committee to structure the Plan to maximize distribution to Creditors in a liquidation while minimizing unnecessary cost.   After thorough review of the Plan and consideration of alternatives, the Committee believes the Plan promotes the best interests of Unsecured Creditors as a whole.  The Committee supports the Plan and has joined the Debtors as a Plan Proponent.  The Proponents believe that an alternative Plan or Chapter 7 liquidation would be disadvantageous to Creditors and result in lower recoveries for Creditors, particularly those holding Unsecured Claims.   For these reasons, the Proponents respectfully recommend that all Creditors vote in favor of the Plan.

RESPECTFULLY SUBMITTED this 2nd day of April, 2019.

> SILVERADO STAGES INC.
> SILVERADO CHARTER SERVICES, LLC
> MICHELANGELO LEASING INC.
> SILVERADO STAGES SC, LLC
> SILVERADO STAGES CC, LLC
> SILVERADO STAGES NC, LLC
> SILVERADO STAGES NV, LLC
> SILVERADO STAGES AZ, LLC
>
> */s/ Matthew Foster*
> Matthew Foster, Chief Restructuring Officer

**APPROVED AS TO FORM AND CONTENT:**


**ALLEN BARNES & JONES, PLC**

By: /s/ *MAJ #27311*
       Michael A. Jones
       Philip J. Giles
       Cody D. Vandewerker
       David B. Nelson
       1850 N. Central Ave., Suite 1150
       Phoenix, Arizona 85004
       *Attorneys for Debtors*

**PERKINS COIE LLP**


By: /s/ *BAC #26223*
       Bradley A. Cosman
       Jordan A. Kroop
       2901 N. Central Ave., Suite 2000
       Phoenix, AZ 85012
       *Attorneys for Official Committee of Unsecured Creditors*

# Exhibit A

1  Michael A. Jones, State Bar #27311
   Philip J. Giles, State Bar #30340
2  Cody D. Vandewerker, State Bar #33385
   David B. Nelson, State Bar #34100
3  **ALLEN BARNES & JONES, PLC**
   1850 N. Central Ave., Suite 1150
4  Phoenix, Arizona 85004
   Ofc: (602) 256-6000
5  Fax: (602) 252-4712
   Email  mjones@allenbarneslaw.com
6         pgiles@allenbarneslaw.com
          cvandewerker@allenbarneslaw.com
7         dnelson@allenbarneslaw.com
   *Attorneys for Debtors*
8

9              **UNITED STATES BANKRUPTCY COURT**

10                    **DISTRICT OF ARIZONA**

11 | In re: | Chapter 11 |

12 | SILVERADO STAGES INC., et al., | Case No. 2:18-bk-12203-MCW (Jointly Administered) |

13 |            Debtors. | |

14 | This filing applies to: | Case No. 2:18-bk-12203-MCW |
15 | | Case No. 2:18-bk-12205-DPC |
   | ☒ ALL DEBTORS | Case No. 2:18-bk-12207-BKM |
16 | ☐ SILVERADO STAGES INC. | Case No. 2:18-bk-12209-MCW |
   | ☐ SILVERADO CHARTER | Case No. 2:18-bk-12210-MCW |
17 | SERVICES, LLC | Case No. 2:18-bk-12213-EPB |
   | ☐ MICHELANGELO LEASING INC. | Case No. 2:18-bk-12215-BKM |
18 | ☐ SILVERADO STAGES SC, LLC | Case No. 2:18-bk-12218-EPB |
19 | ☐ SILVERADO STAGES CC, LLC |  |
   | ☐ SILVERADO STAGES NC, LLC | **DEBTORS AND OFFICIAL COMMITTEE** |
20 | ☐ SILVERADO STAGES NV, LLC | **OF UNSECURED CREDITORS' JOINT** |
   | ☐ SILVERADO STAGES AZ, LLC | **AMENDED PLAN DATED APRIL 2, 2019** |
21

22                       **INTRODUCTION**

23          Silverado Stages, Inc., a Wyoming corporation; Silverado Charter Services, LLC, a

24  California limited liability company; Michelangelo Leasing Inc., an Arizona corporation;

25  Silverado Stages SC, LLC, a California limited liability company; Silverado Stages CC, LLC, a

26  California limited liability company; Silverado Stages NC, LLC, a California limited liability

27  company; Silverado Stages NV, LLC, a Nevada limited liability company; and Silverado Stages

28  AZ, LLC, an Arizona limited liability company (collectively, the "**Debtors**") with the full

support of the court-appointed Official Committee of Unsecured Creditors ("**Committee**" and together with the Debtors, the "**Proponents**") hereby submit this *Debtors and Unsecured Creditors Committee's Joint Amended Plan Dated April 2, 2019.* In addition to reviewing this Plan, all Creditors and interested parties are encouraged to consult the contemporaneously filed *Debtors and Official Committee of Unsecured Creditors' Joint Amended Statement Dated April 2, 2019* ("**Disclosure Statement**") before voting to accept or reject this Plan. **NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

The Debtors prepared the Plan with the Committee's assistance and recommendations. The Court appointed the Committee to represent and advance the rights of Unsecured Creditors as an overall Class. The Committee has reviewed the Plan and agrees that it provides the greatest possible return for Unsecured Creditors under the circumstances. **The Committee encourages Creditors holding Unsecured Claims to submit Ballots voting in favor of the Plan.**

-Remainder of this page intentionally left blank-

{00148534 (S}

# TABLE OF CONTENTS

**ARTICLE 1 – DEFINITIONS** **8**

1.1    **AB&J**    **8**

1.2    **Administrative Claim**    **8**

1.3    **Alliance Lien**    **8**

1.4    **Alliance Personal Property Collateral**    **9**

1.5    **Allowed Claim**    **9**

1.6    **Auction Proceeds**    **9**

1.7    **Ballot**    **9**

1.8    **Bankruptcy Code or Code**    **9**

1.9    **Bankruptcy Court or Court**    **10**

1.10    **Bankruptcy Rules or Rules**    **10**

1.11    **Beneficiaries**    **10**

1.12    **Business Day**    **10**

1.13    **Cash Collateral**    **10**

1.14    **Cash Collateral Orders**    **10**

1.15    **Causes of Action**    **10**

1.16    **Chapter 11 Cases or Cases**    **11**

1.17    **Chapter 11 Professionals**    **11**

1.18    **Claim**    **11**

1.19    **Claimant**    **11**

1.20    **Class**    **11**

1.21    **Coastal**    **11**

1.22    **Confirmation Date**    **11**

1.23    **Confirmation Hearing**    **11**

1.24    **Confirmation Order**    **12**

1.25    **Consolidated Estate**    **12**

1.26    **Creditor**    **12**

| | | | |
|---|---|---|---|
| 1 | 1.27 | **Debtors** | **12** |
| 2 | 1.28 | **Disclosure Statement** | **12** |
| 3 | 1.29 | **Disputed Claim** | **12** |
| 4 | 1.30 | **Disputed Claim Reserve** | **12** |
| 5 | 1.31 | **Distribution Record Date** | **13** |
| 6 | 1.32 | **Effective Date** | **13** |
| 7 | 1.33 | **Estates** | **13** |
| 8 | 1.34 | **Executory Contract** | **13** |
| 9 | 1.35 | **Equity Interests** | **13** |
| 10 | 1.36 | **ESOP** | **13** |
| 11 | 1.37 | **Final Bar Date** | **13** |
| 12 | 1.38 | **Final Decree** | **13** |
| 13 | 1.39 | **Final Order** | **13** |
| 14 | 1.40 | **General Unsecured Claim** | **14** |
| 15 | 1.41 | **Impaired** | **14** |
| 16 | 1.42 | **Indebtedness** | **14** |
| 17 | 1.43 | **Initial Bar Date** | **14** |
| 18 | 1.44 | **Intercompany Claims** | **14** |
| 19 | 1.45 | **Judgment** | **14** |
| 20 | 1.46 | **Lead Case** | **14** |
| 21 | 1.47 | **Liquidating Trust** | **14** |
| 22 | 1.48 | **Liquidating Trust Agreement** | **15** |
| 23 | 1.49 | **Liquidating Trust Assets** | **15** |
| 24 | 1.50 | **Liquidating Trust Assets Account** | **15** |
| 25 | 1.51 | **Liquidating Trustee** | **15** |
| 26 | 1.52 | **Litigation** | **15** |
| 27 | 1.53 | **McCormick** | **16** |
| 28 | 1.54 | **Person** | **16** |

| | | |
|---|---|---|
| 1.55 | Petition Date | 16 |
| 1.56 | Plan | 16 |
| 1.57 | Priority Claim | 16 |
| 1.58 | Professional Fees | 16 |
| 1.59 | Property | 16 |
| 1.60 | Proponents | 16 |
| 1.61 | Sacramento Property | 16 |
| 1.62 | Sacramento Property Proceeds | 17 |
| 1.63 | Secured Claim | 17 |
| 1.64 | Secured Creditor | 17 |
| 1.65 | Silverado Stages | 17 |
| 1.66 | Unsecured Claim | 17 |
| 1.67 | Unsecured Creditor | 17 |
| 1.68 | Western Alliance | 17 |
| 1.69 | Western Alliance Documents | 17 |

**ARTICLE 2 – IMPORTANT DATES & DEADLINES**  18

| | | |
|---|---|---|
| 2.1 | Initial Bar Date | 18 |
| 2.2 | Final Bar Date | 18 |
| 2.3 | Claims Objection Deadline | 19 |
| 2.4 | Deadline for Assumption or Rejection of Executory Contracts | 19 |

**ARTICLE 3 - CLASSIFICATION AND TREAMENT OF CLAIMS**  19

| | | |
|---|---|---|
| 3.1 | Allowed Administrative Claims | 19 |
| 3.2 | Class 1 – Allowed Priority Claims | 20 |
| 3.3 | Class 2 – Secured Claim of Western Alliance | 20 |
| 3.4 | Class 3 – General Unsecured Creditors | 21 |
| 3.5 | Class 4 – Equity Interests | 21 |

**ARTICLE 4 - PLAN IMPLEMENTATION**  22

| | | |
|---|---|---|
| 4.1 | The Liquidating Trust | 23 |

| | | |
|---|---|---|
| 4.2 | Appointment of Creditor Representatives | 24 |
| 4.3 | Appointment of the Liquidating Trustee | 24 |
| 4.4 | Cash Accounts | 26 |
| 4.5 | Litigation | 26 |
| 4.6 | Distribution Procedures | 26 |
| 4.7 | Fees and Expenses of the Liquidating Trust | 27 |
| 4.8 | Withholding Taxes | 27 |
| 4.9 | Full and Final Satisfaction | 27 |
| **ARTICLE 6 - BINDING EFFECT OF PLAN** | | 28 |
| **ARTICLE 7 - EFFECT OF CONFIRMATION** | | 28 |
| **ARTICLE 8 - MODIFICATION OF PLAN** | | 28 |
| 8.1 | Pre-Confirmation | 29 |
| 8.2 | Post-Confirmation | 29 |
| 8.3 | Effect of Modification | 29 |
| **ARTICLE 9 - RETENTION OF JURISDICTION** | | 29 |
| **ARTICLE 10 - RETENTION AND PROSECUTION OF CLAIMS** | | 30 |
| 10.1 | Preservation of Debtors' Claims, Demands, and Causes of Action | 30 |
| 10.2 | Procedure for Determination of Claims | 32 |
| 10.2.1 | Disputed Claims | 33 |
| 10.2.2 | Contingent and Unliquidated Claims | 33 |
| 10.2.3 | Reserve Provisions for Disputed Claims | 34 |
| **ARTICLE 11 - PROVISIONS GOVERNING DISTRIBUTIONS** | | 35 |
| 11.1 | Distributions | 35 |
| 11.2 | Date of Distributions | 35 |
| 11.3 | Delivery of Distributions | 35 |
| 11.4 | Means of Payment | 36 |
| 11.5 | Rounding | 37 |
| 11.6 | De Minimis Cash Distributions | 37 |

| | | |
|---|---|---|
| **11.7** | **Setoff** | **37** |
| **ARTICLE 12 - GENERAL PROVISIONS** | | **37** |
| **12.1** | **Extension of Dates** | **37** |
| **12.2** | **Notices** | **37** |
| **12.3** | **Default** | **37** |
| **12.4** | **Closure of the Cases** | **38** |
| **12.5** | **Effect of Appeal** | **38** |
| **12.6** | **Exculpation and Limitation of Liability** | **38** |
| **12.7** | **General Injunction** | **39** |
| **12.8** | **Interest** | **39** |
| **12.9** | **Additional Assurances** | **40** |
| **12.10** | **Confirmation by Non-Acceptance Method** | **40** |
| **12.11** | **Vesting** | **40** |
| **12.12** | **Successors and Assigns** | **40** |
| **12.13** | **Withdrawal of Plan** | **40** |
| **12.14** | **Severability and Reformation** | **40** |
| **12.15** | **Prohibition Against Prepayment Penalties** | **41** |
| **12.16** | **Payment of Statutory Fees and Filing of Quarterly Reports** | **41** |
| **12.17** | **Governing Law** | **41** |
| **12.18** | **Special Tax Issues** | **41** |
| **12.19** | **Conflicts Between Plan and Confirmation Order** | **41** |

## ARTICLE 1 – DEFINITIONS

The following terms shall have the meanings specified below when used in this Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, the feminine, and the neutral. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, schedule to, or exhibit to the Plan. The headings in the Plan are for convenience only and shall not limit or otherwise affect the provisions of the Plan. The rules of construction contained in Code § 102 shall apply to the construction of the Plan, and unless specifically modified herein, terms that are defined by the Bankruptcy Code shall have the same meanings defined by the Code. All terms not specifically defined by this Plan shall have the meanings designated in the Bankruptcy Code, or, if not defined therein, their ordinary meanings. These definitions are a substantial and operative part of the Plan.

### 1.1   AB&J

This term means the law firm of Allen Barnes & Jones, PLC, the Debtors' Court approved counsel.

### 1.2   Administrative Claim

This term means every cost or expense of administration of the Cases allowed under Code § 503(b) and referred to in Code § 507(a)(1), including, without limitation: a) any actual and necessary expense of preserving the Estates as approved by the Bankruptcy Court; b) all Professional Fees; and c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

### 1.3   Alliance Lien

This term means Western Alliance's valid pre-bankruptcy first position lien and security interest against, among other collateral: (i) substantially all of the Debtors' personal Property; and (ii) all of the Debtors' prepetition cash and accounts receivable, which constitutes cash

collateral as defined in Code § 363(a).

**1.4    Alliance Personal Property Collateral**

This term means all the Debtors' personal Property subject to the Alliance Lien specifically excluding, without limitation, the Auction Proceeds, the Sacramento Property Proceeds, the Judgment, and Causes of Action under Chapter 5 of the Bankruptcy Code.

**1.5    Allowed Claim**

This term means every Claim: (a) (i) as to which a proof of such Claim has been timely filed pursuant to Sections 2.1 or 2.2 below, or (ii) which the Debtors have listed in their Schedules (including any amendments thereto) as liquidated in amount, not contingent, and undisputed; and in either event:  (b) (i) as to which no objection to the allowance of such Claim has been filed within any applicable time period fixed by the Bankruptcy Court, or (ii) as to which the order allowing such Claim has become a Final Order.  The term "Allowed Claim" may be used throughout the Plan with each of the various Claims or Classes of Claims (*e.g.*, "Allowed Administrative Claims" or "Allowed Secured Claims") to signify that such Claims are, will be, or must be Allowed Claims to qualify for certain treatment under the Plan.

**1.6    Auction Proceeds**

This term means the proceeds realized from the Auction of the Debtors' unencumbered property held pursuant to the terms set forth in the *Order Granting Motion to Approve Auction Procedures* [ECF No. 489] of $325,931 with additional unsold vehicles that the Debtors' auctioneer believes will generate approximately an additional $10,000 in sales to interested parties for a total of approximately $335,931.

**1.7    Ballot**

This term means the ballot for accepting or rejecting the Plan, which will be distributed to Claimants in Classes that are Impaired and entitled to vote on this Plan.

**1.8    Bankruptcy Code or Code**

These terms mean Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as now existing or hereafter amended during the Cases.

/ / /

{00148534 /5}

### 1.9 **Bankruptcy Court or Court**

These terms mean the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Cases, including the United States District for the District of Arizona to the extent that the reference of all or part of the Cases is withdrawn.

### 1.10 **Bankruptcy Rules or Rules**

This term means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Cases.

### 1.11 **Beneficiaries**

This term means holders of Allowed Claims entitled to received distribution from the Liquidating Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

### 1.12 **Business Day**

This term means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

### 1.13 **Cash Collateral**

This term means the Debtors' cash and accounts receivable subject to the Alliance Lien.

### 1.14 **Cash Collateral Orders**

This term means any order from the Bankruptcy Court permitting and conditioning the Debtors' use of Cash Collateral, including without limitation: orders entered on October 15, 2018 [ECF No. 61]; November 13, 2018 [ECF No. 130]; December 5, 2018 [ECF No. 225]; and December 19, 2018 [ECF No. 346].

### 1.15 **Causes of Action**

This term means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff or recoupment, third-party claims, counterclaims, and cross claims, including without limitation, all claims and any avoidance, preference, recovery, subordination or other

1  actions against Creditors, insiders, or any other entities under the Bankruptcy Code, and any and
2  all state and common-law claims for breach of fiduciary duty against the Debtors' current or
3  former directors, officers, managers, or members, based in law or equity, including without
4  limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and
5  whether asserted or unasserted as of the Effective Date.

6  **1.16    Chapter 11 Cases or Cases**

7  This term means the Debtors' collective jointly administered Chapter 11 bankruptcy
8  cases: Case Nos. 2:18-bk-12203-MCW; 2:18-bk-12205-DPC; 2:18-bk-12207-BKM; 2:18-bk-
9  12209-MCW; 2:18-bk-12210-MCW; 2:18-bk-12213-EPB; 2:18-bk-12215-BKM; and 2:18-bk-
10 12218-EPB.

11 **1.17    Chapter 11 Professionals**

12 This term means all professionals employed by the Estates under Code § 327.

13 **1.18    Claim**

14 This term means "claim" as defined in Code § 101(5).

15 **1.19    Claimant**

16 This term means the holder of a Claim.

17 **1.20    Class**

18 This term means each of the categories of classified Claims described in Article 3 of the
19 Plan.

20 **1.21    Coastal**

21 This term means Coastal Business Finance Corporation.

22 **1.22    Confirmation Date**

23 This term means the date on which the Bankruptcy Court enters the Confirmation Order.

24 **1.23    Confirmation Hearing**

25 This term means the hearing regarding confirmation of the Plan conducted by the
26 Bankruptcy Court pursuant to Code § 1128, including any adjournment or continuation of that
27 hearing from time to time.

28 / / /

**1.24**    **Confirmation Order**

This term means the Bankruptcy Court's order confirming the Plan pursuant to Code § 1129.

**1.25**    **Consolidated Estate**

This term means the estate created under Article 4 of the Plan, only for the purposes of voting and distributions to holders of Allowed Claims under the Plan, by consolidating the Estates.

**1.26**    **Creditor**

This term means "creditor" as defined in Code § 101(10).

**1.27**    **Debtors**

This term means collectively: Silverado Stages, Inc.; Silverado Charter Services, LLC; Michelangelo Leasing Inc.; Silverado Stages SC, LLC; Silverado Stages CC, LLC; Silverado Stages NC, LLC; Silverado Stages NV, LLC; and Silverado Stages AZ, LLC.

**1.28**    **Disclosure Statement**

This term means the *Debtors and Official Committee of Unsecured Creditors' Joint Amended Statement Dated April 2, 2019* in its present form or as it may be altered, amended, or modified.

**1.29**    **Disputed Claim**

This term means every Claim: a) that is scheduled by the Debtors as disputed, contingent, or unliquidated; or b) that is not an Allowed Claim. Where performance is to be rendered under the Plan to any Creditor in respect to a Disputed Claim, such performance shall not be due (notwithstanding the occurrence of the Effective Date for all other purposes and legal effects) unless and until such Disputed Claim becomes, wholly or in part, an Allowed Claim.

**1.30**    **Disputed Claim Reserve**

This term means the reserve established by the Liquidating Trustee at its sole discretion pursuant to Section 10.2.3 herein for payments of Disputed Claims upon such Claims becoming Allowed Claims.

/ / /

**1.31 Distribution Record Date**

This term means the business day immediately preceding the Effective Date.

**1.32 Effective Date**

This term means the thirtieth (30th) day that occurs after the Confirmation Date.

**1.33 Estates**

This term means the Debtors' collective bankruptcy estates created under Bankruptcy Code § 541.

**1.34 Executory Contract**

This term means every unexpired lease and other contract that is subject to being assumed or rejected under Code § 365.

**1.35 Equity Interests**

This term means any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized, or outstanding membership interests, shares, or stock, together with any warrants, options, or contract rights to purchase or acquire such interests at any time, including the Debtors' Employee Stock Ownership Plan.

**1.36 ESOP**

This term means the Debtors' Employee Stock Ownership Plan that provided certain of the Debtors' employees with an ownership interest in Silverado Stages, Inc.

**1.37 Final Bar Date**

This term means the thirtieth (30th) day that occurs after the Effective Date.

**1.38 Final Decree**

This term means a Final Order showing that the Plan has been fully administered.

**1.39 Final Order**

This term means an order or judgment of the Court that: a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or hearing for *certiorari* is pending; or b) if appealed from, shall have been affirmed and no further hearing, appeal, or petition for *certiorari* can be taken or granted.

{00148534 /3}

**1.40  General Unsecured Claim**

This term means every Unsecured Claim against the Debtors (including, but not limited to, every such Claim arising from the rejection of an Executory Contract, and Unsecured Claims of Creditors with Claims solely against the Debtor) that will be classified and paid pursuant to Class 3.

**1.41  Impaired**

This term means "impaired" as defined in Code § 1124.

**1.42  Indebtedness**

The term means the value of Western Alliance's total Allowed Claim, including Secured and Unsecured Claims as well as post-petition attorneys' fees and costs, against the Debtors and their Estates, of at least $7,518,655 as of the Petition Date.

**1.43  Initial Bar Date**

This term means the day prior to the date of the first hearing on the Disclosure Statement.

**1.44  Intercompany Claims**

This term means any Claims between any of the Debtors.

**1.45  Judgment**

This term means that judgment against MOH Management, LLC and others in favor of the Michelangelo Leasing, Inc. entered in in the District Court for Clark County, Nevada, case no. A-12-668817-C.

**1.46  Lead Case**

This term means the Debtors' jointly administered case Chapter 11 Case, Case No. 2:18-bk-12203-MCW.

**1.47  Liquidating Trust**

This term means the grantor trust created upon the Effective Date for the benefit of the Beneficiaries.

/ / /

/ / /

- 19 -

{00148534 /S}

### 1.48 Liquidating Trust Agreement

This term means the agreement, attached hereto as **Exhibit 1**, governing the Liquidating Trust as it may be subsequently modified from time to time.

### 1.49 Liquidating Trust Assets

This term means the assets held in the Liquidating Trust comprised of: (i) cash; (ii) all Litigation and Causes of Action; (iii) all Claims and rights of the Debtors under any insurance policy; and (iv) any and all other assets, interests, rights, claims, and defenses of the Debtors or Estates, including without limitation, all rights under any order of the Bankruptcy Court.

### 1.50 Liquidating Trust Assets Account

This term means a bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding the Liquidating Trust Assets and their proceeds to be distributed under the Plan and any interest, dividends, or other income earned upon investment of the Liquidating Trust Assets.

### 1.51 Liquidating Trustee

This term means the Person appointed by the Confirmation Order to act as trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement. Pursuant to the Liquidating Trust, Resolute Commercial Services, LLC, by and through Jeremiah Foster, shall serve as the initial Liquidating Trustee upon the Liquidating Trust becoming effective.

### 1.52 Litigation

This term means the interest of the Estates, the Debtors, or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or the Liquidating Trust, as applicable, including, without limitation, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Code §§ 544, 545, 547, 548, 549(a), and 550; (ii) for the turnover of property to the Estates or the Liquidating Trust, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or

the Liquidating Trust, as applicable; (iv) for compensation for damages incurred by the Debtors; and (v) equitable subordination actions against Creditors.

**1.53** **McCormick**

This term means McCormick 107, LLC.

**1.54** **Person**

This term means "person" as defined in Code § 101(41).

**1.55** **Petition Date**

This term means October 5, 2018, the filing date of the Debtors' voluntary Chapter 11 petitions.

**1.56** **Plan**

This term means this *Debtors and Official Committee of Unsecured Creditors' Joint Amended Plan Dated April 2, 2019* and every amendment to or modification thereof, if any.

**1.57** **Priority Claim**

This term means any Claim entitled to priority under Code § 507(a).

**1.58** **Professional Fees**

This term means any of the interim and final professional fees, costs, and expenses charged by the Chapter 11 Professionals.

**1.59** **Property**

This term means, with respect to the Debtors, all rights, causes of action, all of the right, title and interest in and to property (real or personal, tangible or intangible, legal or equitable, liquidated or unliquidated) of whatever type or nature, owned by the Debtors as of the Effective Date, together with property subsequently acquired by the Debtors, and including, but not limited to, property as defined in Code § 541.

**1.60** **Proponents**

This term means the parties proposing the Plan, the Debtors and the Committee.

**1.61** **Sacramento Property**

This term means Silverado Stages Inc.'s real property located at 1812 Main Avenue, Sacramento, California 95838.

**1.62**    **Sacramento Property Proceeds**

This term means the net sale proceeds of of $1,271,536.67 realized from the Debtors' sale of the Sacramento Property conducted pursuant to the terms set forth in the *Order Granting Motion Pursuant to 11 U.S.C. § 363 to Approve Sale of Real Property Free and Clear of Liens, Claims, Enecumbrances, and Other Interests* [ECF No. 627].

**1.63**    **Secured Claim**

This term means every Claim or portion thereof that is asserted by a Creditor holding such Claim to be secured by a lien, security interest, or assignment encumbering Property in which the Debtors have an interest; provided, however, that such Claim shall be a Secured Claim only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and only to the extent of the value of the interest of the Creditor holding such Claim against such Property.

**1.64**    **Secured Creditor**

This term means every Creditor that asserts a Secured Claim in the Cases.

**1.65**    **Silverado Stages**

This term means the Debtors' overall transportation business that was operated collectively through the Debtors' entities.

**1.66**    **Unsecured Claim**

This term means all Claims asserted by Creditors, including deficiency Claims, dissolution Claims and Claims arising out of the rejection of Executory Contracts, other than Secured Claims, Administrative Claims, and Priority Tax Claims.

**1.67**    **Unsecured Creditor**

This term means every Creditor that asserts an Unsecured Claim in the Cases.

**1.68**    **Western Alliance**

This term means Western Alliance Bank.

**1.69**    **Western Alliance Documents**

This term means the Debtors' pre-petition loan documents with Western Alliance or Western Alliance's predecessor-in-interest including with limitation the Loan Agreement dated

February 15, 2017, Revolving Promissory Note dated February 15, 2017, and a Term Loan Promissory Note dated February 15, 2017, among other documents.

## ARTICLE 2 – IMPORTANT DATES & DEADLINES

### 2.1    Initial Bar Date

The Court originally set a hearing for May 21, 2019 at 10:00 a.m. at 230 N. First Avenue, 7th Floor, Courtroom 702, Phoenix, Arizona, to consider the adequacy of the Disclosure Statement and set May 21, 2019 as the Initial Bar Date for filing proofs of Claim. For eligibility as Allowed Claims, proofs of Claim must be filed for:

1    Claims not listed in the Schedules of Assets and Liabilities, as may be amended from time to time;

2    Claims that are listed in the Schedules of Assets and Liabilities as disputed, contingent, or unliquidated;

3    Claims that differ in any respect from those listed in the Schedules of Assets and Liabilities (including, without limitation, the assertion of any right to a setoff under Code § 553 or otherwise);

4    Administrative Claims arising prior to the Initial Bar Date, except for Professional Fees; and

5    Claims arising from the Debtors' rejection of an Executory Contract that occurs prior to the Bar Date.

Any Person or entity asserting one of the foregoing types of Claims that fails to timely file a proof of Claim or application for payment thereof prior to Initial Bar Date shall be deemed to have waived its Claim, and the Claim will be disallowed and forever barred.

### 2.2    Final Bar Date

Applications for allowance and payment of: a) Administrative Claims that arise after the Initial Bar Date; b) Professional Fees incurred prior to the Confirmation Date; or c) Claims resulting from the Debtors' rejection of Executory Contracts after the Initial Bar Date must be filed no later than the Final Bar Date, unless exempted from such requirement pursuant to the Bankruptcy Code.  Any Person asserting one of the foregoing types of Claims that fails to timely file a proof of Claim or application for allowance and payment thereof shall be deemed to have waived its Claim, and the Claim will be disallowed.  Any Professional Fees incurred after the Confirmation Date shall be payable in in accordance with the Liquidating Trust

without the need to seek or obtain Bankruptcy Court approval.

**2.3    Claims Objection Deadline**

On or before the ninetieth (90th) day after the Effective Date, the Debtors, Liquidating Trustee or any interested party may file with the Bankruptcy Court, serving a copy upon AB&J and the Liquidating Trustee, as applicable, an objection to any application for approval of an Administrative Claim or proof of Claim filed, or deemed filed herein. The Bankruptcy Court may extend the deadline under this section.  Filing of a motion to extend the deadline under this Section tolls the deadline until entry of an order by the Bankruptcy Court with respect to such motion.

**2.4    Deadline for Assumption or Rejection of Executory Contracts**

Prior to the Confirmation Date, the Debtors will file motions to assume or reject Executory Contracts.  Any Executory Contract not assumed prior to, or subject to a pending motion to assume on, the Confirmation Date shall be deemed rejected as of the Confirmation Date.

**ARTICLE 3 - CLASSIFICATION AND TREAMENT OF CLAIMS**

This Plan defines various Classes of Claims and provides for their treatment.  This Plan deals with all Claims against the Debtors of whatever character.  Only Allowed Claims are entitled to receive payments under the Plan. In accordance with Code §§ 1122 and 1123, all Claims against the Debtors or the Estates are classified and will receive treatment as follows:

**3.1    Allowed Administrative Claims**

Pursuant to Code § 1123(a)(1), Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan.  These Claims include, without limitation, post-petition tax Claims, Professional Fees, approved accounting fees, and any fees due and payable to the United States Trustee.  Applications for approval of Administrative Claims must be filed with the Court, and copies must be served upon the Debtor and the Liquidating Trustee unless exempted by applicable law.  Any holder of an Administrative Claim that fails to timely file a final application for approval of such Administrative Claim shall be deemed to have waived its Claim, and the Claim will be disallowed.  Unless otherwise agreed, the holders of

Allowed Administrative Claims shall be paid in full on the Effective Date from the Debtors' unencumbered cash.

### 3.2 Class 1 – Allowed Priority Claims

Class 1 consists of Allowed Claims entitled to priority pursuant to Code § 507(a), unless such Claim qualifies as an Administrative Claim. Unless such Claimant agrees to less favorable treatment, the Liquidating Trustee shall pay each Class 1 Claim in full in order of the priority structure set forth in Code § 507(a). Each Claim of equal or higher priority shall receive payment in full before payment of any Claim entitled to lower priority. To the extent the Liquidating Trustee cannot pay each Claim entitled to equal priority in full at any given time, the Liquidating Trustee shall distribute a *pro rata* share of available funds to Claims of equal priority until the Liquidating Trustee has paid all Class 1 Claims. No prepayment penalty shall apply to the Class 1. Class 1 is not Impaired and deemed to accept the Plan.

### 3.3 Class 2 – Secured Claim of Western Alliance

Class 2 consists solely of the Allowed Secured Claim of Western Alliance. As of the Petition Date, the Debtors owed Western Alliance an Indebtedness in the amount of at least $7,518,655 pursuant to the terms of the Western Alliance Documents and at least $750,000 under the Letters of Credit. No prepayment penalty shall apply to the Class 2. Class 2 is undersecured and shall not accrue interest.

The Allowed Secured Claim of Western Alliance is secured by the Alliance Lien. The Debtors previously agreed in the Cash Collateral Orders to replacements liens related to the Cash Collateral with the parties reserving their rights regarding the value of such replacement liens and any diminution of Western Alliance's collateral, if any. Since the Petition Date and in accordance with the Cash Collateral Orders, the Debtors have paid the amount of $1,444,547 to Western Alliance. The Debtors' remaining accounts receivable total approximately $1,238,127.99, and the Debtors currently hold the additional amount of no more than $56,098 in Cash Collateral. The Debtors are working with Western Alliance and the Committee regarding the extent of Western Alliance's collateral and asserted liens. Any such unencumbered amounts shall vest in the Liquidating Trust. The Alliance Lien and Cash Collateral do not extend to or

include: the Auction Proceeds, the Sacramento Property Proceeds, the Judgment, and Causes of Action under Chapter 5 of the Bankruptcy Code.

The Debtors are continuing to collect and turnover Western Alliance's collateral, subject to existing Cash Collateral Orders. Unless otherwise agreed by Western Alliance and the Liquidating Trustee, on the Effective Date, the Debtors shall turnover to Western Alliance any remaining collateral, if any, subject to the Alliance Lien or Western Alliance's replacement liens. Upon turnover of Western Alliance's collateral, Class 2 shall be deemed satisfied.

Western Alliance shall hold an Allowed Class 3 Claim in the amount of the difference between: (i) the amount of the Indebtedness, plus all attorneys' fees and costs incurred by Western Alliance on and after the Petition Date; and (ii) the value of collateral received by Western Alliance on its Allowed Class 2 Secured Claim. Class 2 is Impaired and entitled to vote on the Plan.

### 3.4    Class 3 – General Unsecured Creditors

Class 3 consists of all Allowed Unsecured Claims that are not entitled to classification in any other Class of Claims. Class 3 includes all deficiency Claims remaining after the return or sale of collateral, including without limitation, the deficiency Claim of Western Alliance described in Class 2. After payment of or reservation for Administrative Claims, Class 1 Claims, and the Class 2 Claim, the Liquidating Trustee shall distribute a *pro rata* share of all funds to Class 3 Claimants as available in accordance with the Liquidating Trust Agreement. Class 3 Claims shall not accrue interest. No prepayment penalty shall apply to Class 3. If a Class 3 Claim is not an Allowed Claim prior to the Initial Payment Date, the holder of the Class 3 Claim shall not receive payment until its Claim is Allowed. Class 3 is Impaired and entitled to vote on the Plan.

### 3.5    Class 4 – Equity Interests

There shall be no distribution on account of Class 4 Equity Interests. Upon the Effective Date, the Equity Interests, including the ESOP, will be deemed cancelled and will cease to exist. Holders of Equity Interests will receive no distribution under the Plan and therefore are deemed to have rejected the Plan. Accordingly, Holders of Equity Interests are not entitled to vote.

## ARTICLE 4 - PLAN IMPLEMENTATION

The Plan constitutes a motion for substantive consolidation of the Debtors' liabilities and Property only for purposes of Plan voting and distributions to holders of Allowed Claims. Confirmation of the Plan shall constitute the Bankruptcy Court's order granting of that motion. Substantive consolidation is appropriate where: (1) creditors dealt with the entities as a single economic unit; or (2) the affairs of the debtors are so entangled that consolidation will benefit all creditors. *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 766 (9th Cir. 2000). Since their inception and merger, the Debtors have jointly operated Silverado Stages as a unified business in their transactions with Creditors. The Debtors have the same primary Creditors, and their assets truly belong to the unified operating business. Accordingly, substantive consolidation as provided in the Plan is appropriate.

Substantively consolidating the Debtors' liabilities and Property on the Effective Date: (a) consolidates the Cases into the Lead Case as a single case; (b) consolidates all Estates' Property into the Consolidated Estate only for purposes of Plan voting and distributions to holders of Allowed Claims under the Plan; (c) converts all Claims against any of the Estates into Claims against the Consolidated Estate such that any proof of Claim filed against one or more of the Debtors is deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of Claim for the same Claim filed against more than one Debtor are deemed expunged; (d) disallows, discharges, and eliminates all Intercompany Claims and precludes any distributions under the Plan on account of Intercompany Claims; (e) eliminates and discharges all guarantees by one Debtor of the obligations of any other Debtor or in favor of any other Debtor and precludes any distributions under the Plan on account of Claims based on such guarantees; and (f) for purposes of determining the availability of the right of setoff under Code § 553, treats all Debtors as one consolidated entity so that, subject to the other provisions of Code § 553, debts due to any Debtor may be setoff against the debts of any other Debtor. Substantive consolidation under the Plan does not affect valid, enforceable, and unavoidable liens, except for liens that secure a Claim that is eliminated by virtue of substantive consolidation. Substantive consolidation under the Plan does not create a Claim in a Class

different from the Class in which a Claim would have been placed in the absence of substantive consolidation. The substantive consolidation contemplated in the Plan does not affect any applicable date for purposes of pursuing Causes of Action, if any. **SUBSTANTIVE CONSOLIDATION UNDER THE PLAN IS STRICTLY FOR THE PURPOSES DESCRIBED IN THE PLAN AND DOES NOT EFFECT A MERGER OR OTHER CONSOLIDATION OF THE DEBTORS.**

### 4.1     The Liquidating Trust

The Plan will be funded from the Liquidating Trust Assets, including among other things, the Auction Proceeds; the Sacramento Property Proceeds; the Judgment; and Causes of Action under Chapter 5 of the Bankruptcy Code. On the Effective Date, the Debtors' Property not previously distributed shall vest in the Liquidating Trust, becoming the Liquidating Trust Assets. The Liquidating Trustee shall administer the Liquidating Trust Assets, prosecute and resolve all Disputed Claims, investigate and pursue Litigation and Causes of Action, and make distributions to the Beneficiaries of the Liquidating Trust. The distributions will be made as provided in the Plan. The Liquidating Trustee shall have the powers and rights described in the Plan and the Liquidating Trust Agreement, incorporated herein as if fully restated.

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall constitute a motion pursuant to Code §§ 105, 363, and 365 to effect such. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets.

The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Except to the extent definitive guidance from the IRS or a

{00148534 /S}

court of competent jurisdiction, including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets as soon as possible after the Effective Date. The valuation shall be used consistently by all parties, including, without limitation: the Trustee, on behalf of the Debtors, the Liquidating Trust, the Beneficiaries, and the Creditor Representatives, for all federal income tax purposes.

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

### 4.2    Appointment of Creditor Representatives

On or prior to the Effective Date, the Committee may, but is not obligated to, designate up to three Persons to act as "Creditor Representatives," as defined in the Liquidating Trust Agreement. Upon the death, resignation or refusal to serve of a Creditor Representative designated by the Committee, the remaining individual Creditor Representatives designated may appoint a replacement by majority vote. If, at any time from and after the Effective Date, there are no designated Creditor Representatives, then no Persons may act as, or on behalf of the Creditor Representatives.

### 4.3    Appointment of the Liquidating Trustee

The Liquidating Trustee shall be appointed pursuant to the Confirmation Order. From and after the Effective Date, the Liquidating Trustee's professionals may be retained by the Liquidating Trustee without further need for approval by the Bankruptcy Court. All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets, after payment in full of all Allowed Administrative Claims, in accordance with the Liquidating Trust Agreement.

-29-
{00148534 /3}

Under Section 4.1 of the Liquidating Trust Agreement, the Liquidating Trustee must discharge his duties in a fiduciary capacity, except that the Liquidating Trustee may arrange for payment of his reasonable fees and expenses from the Trust Assets as permitted in the Liquidating Trust Agreement. The Liquidating Trust Agreement provides that the Liquidating Trustee will consult with appointed Creditor Representatives, but vests ultimate decision-making authority in the Liquidating Trustee. Upon receipt of a written request from a Creditor Representatives for a determination of a matter within the administration of the Liquidating Trust, the Liquidating Trustee will take such actions as he determines are reasonable to resolve such request. In the event that a Creditor Representative seeks review by the Bankruptcy Court of a determination or action of the Liquidating Trustee, the Liquidating Trustee will respond to, appear on account of, and participate in such proceedings as may be required by the Bankruptcy Court for resolution of such request for review.

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Code § 1123 and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Code §§ 704 and 1106 and Rule 2004 to act on behalf of the Liquidating Trust. The Liquidating Trustee will have the right to, without limitation: (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon, or compromise any Causes of Action; (4) make distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to Claims (including Administrative Claims) and prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtors and their Estates with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Chapter 11 Professionals in accordance with the Liquidating Trust Agreement or the Plan, provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets, to

the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

### 4.4    Cash Accounts

The unencumbered cash collected subsequent to the Effective Date and cash to be reserved by the Liquidating Trustee will be maintained by the Liquidating Trustee in interest-bearing bank accounts.  The Debtors currently hold free and clear cash in the total amount of approximately $1.6 million.

### 4.5    Litigation

Except as otherwise provided in this Plan, Litigation, including without limitation all Causes of Action, is retained, vested in the Liquidating Trust, and preserved pursuant to Code § 1123(b). From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee. To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtors, including in any derivative capacity or as an intervening party, will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors pursuant to the Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

The Liquidating Trustee has discretion to pursue or not to pursue any and all Litigation or Causes of Action as he determines is in the best interests of the Beneficiaries and consistent with the specific authority of the Liquidating Trustee.  With respect to any Litigation or Cause of Action, the Liquidating Trust and the Liquidating Trustee are bound by, and will give effect to, any release, exculpation, waiver, estoppel or injunction, including, without limitation, any of the foregoing, provided by the Plan or the Confirmation Order.

### 4.6    Distribution Procedures

The Liquidating Trustee shall make distributions to holders of Claims as provided in the Plan. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may, in his sole discretion, make a full or partial *pro rata* distribution to Allowed Unsecured Claims as provided in Article 3 above. To the extent that the Liquidating Trustee ever determines that

there is likely to be remaining Liquidating Trust Assets realized by the Liquidating Trust after the payment in full of all Liquidating Trust expenses and Allowed Claims, with interest accrued from and after the Petition Date, the Liquidating Trustee will file a notice to this effect with the Bankruptcy Court.

### 4.7 Fees and Expenses of the Liquidating Trust

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

### 4.8 Withholding Taxes

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee may withhold the entire distribution to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification to the holder of the need for such information or for the cash necessary to comply with any applicable withholding requirements, then such distribution shall be treated as an unclaimed distribution pursuant to Section 11.3 below.

### 4.9 Full and Final Satisfaction

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all debts of the Debtors shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on

account of any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust Agreement. All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating Trust; provided, however, that nothing contained herein shall be deemed to constitute or result in a discharge of the Debtors under Code § 1141(d).

## ARTICLE 5 - VOTING PROCEDURE

Creditors will vote to accept or reject the Plan. THE PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS; provided, however, if the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan and that Creditors receive as much or more under the Plan than they would receive in a Chapter 7 liquidation.

## ARTICLE 6 - BINDING EFFECT OF PLAN

The provisions of this Plan shall bind the Debtors, the Liquidating Trustee, and any Person or entity holding a Claim against the Debtors or their Estates, whether asserted or not asserted, whether such Person or entity's Claim arose before or after the respective Petition Date or the Effective Date, whether or not the Claim is Impaired under the Plan, and whether or not such Person or entity has accepted or rejected the Plan.

## ARTICLE 7 - EFFECT OF CONFIRMATION

Upon the Effective Date, all Property of the Estates will vest in the Liquidating Trustee, who, subject to the obligations set forth in the Plan, may use the Property free of any burdens of the Bankruptcy Code and without need to obtain Court approval of his actions.

## ARTICLE 8 - MODIFICATION OF PLAN

This Plan may be modified in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

/ / /

{00148534 15}    -52-

### 8.1    Pre-Confirmation

In accordance with Code § 1127(a), the Proponents may propose the modification of the Plan in writing at any time before confirmation, provided that the Plan, as thus modified, meets the requirements of Code §§ 1122 and 1123, and the Proponents comply with Code § 1125.

### 8.2    Post-Confirmation

In accordance with Code § 1127(b), the Plan also may be modified at any time after confirmation and before its substantial consummation, provided that: a) the Plan as modified meets the requirements of Code §§ 1122 and 1123; b) the circumstances then existing justify such modification; and c) the Court confirms the Plan as thus modified under Code § 1129.

### 8.3    Effect of Modification

Every modification of the Plan will supersede the previous version of the Plan as and when each modification is effective.  When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void, and unusable by the Proposal or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

Notwithstanding anything to the contrary contained herein, the Proponents shall not be bound by estoppel, or the principles of *res judicata* or collateral estoppel, with respect to any term or provision contained herein in the event the Plan is not confirmed upon the terms and provisions set forth herein.

### ARTICLE 9 - RETENTION OF JURISDICTION

Notwithstanding the confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for all matters arising out of, or related to, the Cases and this Plan, including, but not limited to all of the following matters:

a) Allowance and payment of any Claims upon any objection thereto (or other appropriate proceedings) by any party in interest entitled to proceed in that manner;

b) Determination and adjudication of any issues that arise out of or relate to a sale of any Property;

c) Determination and adjudication of any disputes that arise regarding the interpretation of any provisions of this Plan;

d) Facilitation of the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate orders regarding this Plan and any provisions thereof;

e) Adjudication of any causes of action or other proceedings presently pending or otherwise referenced in the Plan, including but not limited to any action regarding the initiation, prosecution, enforcement, compromise or settlement of the causes of action in the Estates, and the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b) that may be pertinent to the Cases;

f) Enforcement of any provisions of the Plan and any and all documents relating to the Plan;

g) Determination and adjudication of any issues that relate to the Cases, and any governmental unit's Claim with respect to any tax, or any fine, interest or penalty relating to a tax;

h) Determination of any dispute that may arise regarding the enforcement of any settlement or compromise related to the Cases; and

i) Review of any determination or action by the Liquidating Trustee or any issue arising under or related to the Liquidating Trust.

The Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust and the Liquidating Trustee, including, without limitation, the administration and activities of the Liquidation Trust and the Liquidating Trustee, provided, however, that notwithstanding anything to the contrary, the Liquidating Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any retained Cause of Action constituting Liquidating Trust Assets or Disputed Claim or claim objection in accordance with the Chapter 11 Plan.

## ARTICLE 10 - RETENTION AND PROSECUTION OF CLAIMS

### 10.1     Preservation of Debtors' Claims, Demands, and Causes of Action

In accordance with Code § 1123(b)(3), all of the Debtors' claims and causes of action against third parties will: a) survive the entry of the Confirmation Order and the Effective Date, b) not be discharged by the Plan, and c) become and remain part Liquidating Trust Assets after the Effective Date.

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Code § 1123(b)(3), any Litigation and Causes of Action that the Debtors or their Estates may hold against any party shall vest upon the Effective Date in the Liquidating Trust. Except as

otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Litigation or Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. Any recoveries therefrom shall remain the sole property of the Liquidating Trust, for the Beneficiaries of the Liquidating Trust in accordance with the Liquidating Trust Agreement, and holders of Claims shall have no right to any such recovery.

Unless Litigation or a Cause of Action against a holder of a Claim or other party is expressly waived, relinquished, released, compromised, or settled in the Plan or any final Order, including the Confirmation Order, the Debtors and the Liquidating Trustee expressly reserve such retained Litigation and Causes of Action for later adjudication by the Liquidating Trustee, including, without limitation, Causes of Action not specifically identified or described herein or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel, or laches shall apply to any Litigation or Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order, including the Confirmation Order. In addition, the Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are a defendant or an interested party against any party, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

The Debtors have identified potentially liable parties in Exhibit B to the Disclosure Statement. Regardless of the disclosure of potentially liable parties, any parties to which the Debtors have incurred an obligation, whether on account of services, the purchase or sale of goods, or otherwise, or has received services from the Debtors or a transfer of money or

Property of the Debtors, or has transacted business with the Debtors, or leased equipment or Property from the Debtors, should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such party has filed a Proof of Claim against the Debtors in these Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such party's Proof of Claim; (iii) any such party's Claim was included in the Debtors' schedules or other disclosures; (iv) the Debtors or Liquidating Trustee have objected to any such party's scheduled Claim; or (v) any such party's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated.

### 10.2    Procedure for Determination of Claims

Except as otherwise agreed, any and all proofs of Claim filed after the Initial Bar Date shall be deemed disallowed as of the Effective Date without any further notice or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.  No Claim will be an Allowed Claim until timely filed objections to its allowance are resolved.  **Any Claims not timely filed or Allowed shall be deemed disallowed by the Confirmation Order.**  Only Allowed Claims and interests will receive distributions from the Estates and Liquidating Trust.

Any Claims held by any Person from which property is recoverable under Code §§ 542, 543, 550, or 553 or by any Person that is a transferee of transfers avoidable under Code §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be deemed disallowed pursuant to Code § 502(d), and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Person have been turned over or paid to the Debtors or Liquidating Trust.

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Liquidating Trustee, as applicable, without an objection filed and without further notice

to or action, order, or approval of the Bankruptcy Court.

**10.2.1  Disputed Claims**

Except as to any Claim that has been Allowed prior to the Effective Date, on or before the ninetieth (90th) day after the Effective Date, the Debtors or any party-in-interest may object to the allowance of a Claim or seek estimation thereof as described in Section 2.3 above. No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims, and only then only in accordance with the Liquidating Trust Agreement. If a Claim is not an Allowed Claim as of the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed Claim will be made when such Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan and Liquidating Trust Agreement.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to the exclusion of all others, except as to the Chapter 11 Professionals' applications for allowance of compensation and reimbursement of expenses under Code §§ 330 and 503, to make, file, prosecute, settle, withdraw, or resolve objections to Claims. The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust. From and after the Confirmation Date, all objections with respect to Claims shall be litigated to a Final Order except to the extent the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Claim without approval of the Bankruptcy Court.

**10.2.2  Contingent and Unliquidated Claims**

Until such time as a contingent or unliquidated Claim, or a contingent or unliquidated portion of an Allowed Claim, becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a contingent or unliquidated Claim will only be entitled to a distribution under the Plan when and if such contingent or unliquidated Claim becomes an Allowed Claim.

At any time: (a) prior to the Effective Date, the Debtors; and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Code § 502(c) regardless of whether the Debtors or the Liquidating Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

### 10.2.3  Reserve Provisions for Disputed Claims

On or after the Effective Date, the Liquidating Trustee may reserve cash reserves for the treatment of Disputed Claims in the Disputed Claim Reserve. On each distribution date after the Effective Date in which the Liquidating Trustee makes distributions to holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the *pro rata* share of such distributions to holders of Disputed Claims if such Claims were Allowed Claims, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the holders of Claims ultimately determined to be Allowed. The Disputed Claim Reserve shall be closed and extinguished by the Liquidating Trust when all distributions and other dispositions of cash of other Property required to be made hereunder have been made

in accordance with the terms of the Plan. Upon closure of a Disputed Claim Reserve, all cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trust. All funds or other property that vest or revest in the Liquidating Trust pursuant to this provision shall be (a) used to pay the fees and expenses of the Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement, and (b) thereafter distributed on a *pro rata* basis to holders of Allowed Claims. Except as expressly set forth in the Plan, neither the Debtors nor the Liquidating Trustee shall have any duty to fund the Disputed Claim Reserve.

## ARTICLE 11 - PROVISIONS GOVERNING DISTRIBUTIONS

### 11.1 Distributions

The Debtors and Liquidating Trustee will pay Allowed Claims according to the Plan.

### 11.2 Date of Distributions

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court, distributions of cash on account of Allowed Claims will be made in accordance with the Liquidating Trust Agreement.

### 11.3 Delivery of Distributions

Subject to Rule 9010, distributions and deliveries to each holder of an Allowed Claim will be made at the address of such holder as set forth on the respective proof of Claim as of the Effective Date or at the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified of a change of address. If any holder's distribution is returned as undeliverable, no further distribution to such holder will be made unless and until the Liquidating Trustee and Debtors, as applicable, are notified of such holder's then-current address, at which time all missed distributions will be made to such holder without interest. Neither the Debtors nor the Liquidating Trustee will be under no obligation to attempt to locate the holder of any Allowed Claim.

Except with respect to property not distributed because it is being held in a Disputed Claim Reserve, distributions that are not claimed by ninety (90) days after the date of an attempted distribution shall be deemed to be unclaimed property under Code § 347(b) and shall

vest or revest in the Liquidating Trust, and the Claims with respect to which those distributions are made shall be automatically cancelled. After the expiration of that period, the claim of any Person to those Distributions shall be discharged and forever barred. All funds or other property that vest or revest in the Liquidating Trust pursuant to this paragraph shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Liquidating Trustee shall have no obligation to recognize any purported transfer or encumbrance of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

### 11.4    <u>Means of Payment</u>

Payments made to holders of Allowed Claims pursuant to this Plan will be in United States dollars by checks drawn on the domestic bank selected by the Debtors or Liquidating Trustee, as applicable. Checks issued by the Liquidating Trustee with respect to Allowed Claims will be null and void if not negotiated within three (3) months after the date of issuance. Requests for reissuance of any check must be made directly to the Liquidating Trustee by the Person to whom such check originally was issued. Any such requests must be made on or before four (4) months of the date of issuance of the particular check. After such date, all Claims in respect of void checks are discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Code § 347(b).

**11.5    Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**11.6    De Minimis Cash Distributions**

No cash payment of less than fifty dollars ($50) will be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Liquidating Trustee no later than twenty (20) days after the Effective Date.  Such cash shall be held for such holder until the earlier of (i) the next time an interim distribution is made to the holders of Allowed Claims, unless the distribution would still be less than fifty dollars ($50), in which case this provision shall again apply, or (ii) the date on which a final distribution is made to the holders of Allowed Claims.

**11.7    Setoff**

Pursuant to Code § 553 or common law rights of setoff or recoupment, the Debtors and Liquidating Trustee will, in the ordinary course of its affairs, set off or assert recoupment against any Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Debtors or Liquidating Trustee may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder will constitute a waiver or release of any such Claims, rights, and Causes of Action that the Debtors or Liquidating Trustee may possess against such holder.

## ARTICLE 12 - GENERAL PROVISIONS

**12.1    Extension of Dates**

If any date set forth in this Plan, including a payment due date, falls on a day that is not a Business Day, then such date will be the next Business Day.

**12.2    Notices**

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first-class mail, hand-delivery, facsimile, or e-mail.

**12.3    Default**

If the Debtors or Liquidating Trustee are unable to perform in accordance with the Plan,

then they will be in default.  Any Creditor may seek to enforce the Plan.  <u>Before doing so, the</u> <u>Creditor must provide notice to the Liquidating Trustee specifying the nature of the alleged default</u> <u>and a 30-day period to cure the default.  Any notice must be in writing and sent via certified mail to</u> <u>the Liquidating Trustee and his counsel at the addresses that will be filed with the Court when the</u> <u>Liquidating Trustee is appointed.</u>

### 12.4   <u>Closure of the Cases</u>

At such time as the Plan has been substantially consummated, the Debtors or Liquidating Trustee will file an application for entry of a Final Decree, upon the entry of which the Cases shall be deemed closed.

### 12.5   <u>Effect of Appeal</u>

In the event of any appeal of the Confirmation Order, and provided that no stay of the effectiveness of such Confirmation Order has been entered, the implementation and enforcement of the Confirmation Order and the Plan according to their terms shall remain unaffected.

### 12.6   <u>Exculpation and Limitation of Liability</u>

Pursuant to Code § 1103(c) the members of the Committee, together with the professionals authorized by the Court to provide services for the Committee, are provided statutory qualified immunity.  Correspondingly, pursuant to Code § 1107, the Debtors' fiduciaries are also provided statutory qualified immunity for those instances they step into the shoes of a Chapter 11 trustee during the administration of these jointly administered Bankruptcy Cases.  This same qualified immunity is thereby imputed to the Debtors' Chapter 11 Professionals authorized by the Bankruptcy Court to provide services on behalf of these jointly administered Bankruptcy Estates.  This qualified immunity is limited in nature.  It only pertains to actions taken by the Committee members in their official capacities, the Debtors' fiduciaries and their authorized Chapter 11 Professionals from the Petition Date, through the date of confirmation, upon which date a chapter 11 trustee's duties and responsibilities to the Bankruptcy Estate are terminated by statute.  The qualified immunity is only applicable to those actions taken by the Committee members, the Debtors' fiduciaries and their authorized Chapter

Case 2:18-bk-12203-MCW    Doc 646    Filed 04/02/19    Entered 04/02/19 17:57:40    Desc
{00148534 /5}                              Main Document         Page 64 of 98

11 Professionals for actions that are necessary to the administration of the bankruptcy case. Qualified immunity shall not extend to the ordinary business transactions of the Debtors. This qualified immunity is equal to the same protection afforded a bankruptcy trustee pursuant to *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983); *In re Castillo*, 248 B.R. 153, 157 (9th Cir. BAP 2000); and *In re Kashani*, 190 B.R. 875, 883 (9th Cir. BAP 1995). Finally, any party seeking to bring an action against a member of the Committee, a fiduciary of the Debtors, or their authorized Chapter 11 Professionals for actions arising from or related to these jointly administered bankruptcy proceedings, must seek permission of the Bankruptcy Court before commencing a lawsuit in another forum. *See In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005); *Blixseth v. Brown (In re Yellowstone Mountain Club, LLC)*, 841 F.3d 1090 (9th Cir. 2016); *see also Kashani* at 885.

### 12.7 General Injunction

Except as otherwise expressly provided in this Plan, the Confirmation Order shall provide, among other things, that all parties-in-interest who have held, hold, or may hold Claims are permanently enjoined with respect to such Claims, on and after the Effective Date, from: a) commencing or continuing in any manner any action or other proceeding of any kind; b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order; c) creating, perfecting, or enforcing any encumbrance of any kind; d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due e) conducting any form of discovery; or f) otherwise engaging in harassment. The forgoing injunction applies with regard to acts against the Debtors, the Property, the Debtors' successors-in-interest, and the Property of their successors-in-interest.

### 12.8 Interest

Unless set forth specifically herein, whenever interest is to be computed under the Plan, interest will be simple interest and not compounded. Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the Petition Date on any Claim.

**12.9    Additional Assurances**

The Debtors and any interested parties holding Allowed Claims will execute such other further documents as are necessary to implement any of the provisions of the Plan.

**12.10    Confirmation by Non-Acceptance Method**

The Proponents hereby request, if necessary, confirmation of the Plan pursuant to Code § 1129(b) with respect to any Impaired Class of Claims that does not vote to accept the Plan.

**12.11    Vesting**

Upon the Confirmation Date, the Liquidating Trust shall be vested with all of the Property.  All Property shall be free and clear of all liens, Claims, and interests of Creditors and parties-in-interest except as specifically provided in this Plan.

**12.12    Successors and Assigns**

The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party-in-interest.

**12.13    Withdrawal of Plan**

The Plan may be withdrawn by the Proponents at any time before entry of the Confirmation Order.

**12.14    Severability and Reformation**

The Proponents intend to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan.  Therefore, if the Court determines that any Plan provision is contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan if it cannot be reformed, or the provision or its interpretation will be deemed reformed to ensure compliance; provided, however, that nothing contained in this provision will prevent the Proponents from modifying the Plan in accordance with and as set forth in the Plan.  Pursuant to any ruling by the Court regarding the subject matter of this provision, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

{00148534 /5}

**12.15   Prohibition Against Prepayment Penalties**

If the Liquidating Trustee so chooses, in its sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, the Liquidating Trust will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Court.

**12.16   Payment of Statutory Fees and Filing of Quarterly Reports**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date.  Upon the Effective Date, the Debtors' Estates shall be consolidated as provided in Article 4 above and all Cases other than the Lead Case shall be deemed closed.  Following the Effective Date and with its assets held by the Liquidating Trust, the Consolidated Estate will not generate any income, make any distributions, or hold any assets.  Accordingly, upon the Effective Date and until entry of an order closing the Lead Case or converting such case to a Chapter 7 proceeding, the Liquidating Trustee shall pay the minimum statutory fee to the U.S. Trustee's Office as set forth in 28 U.S.C. § 1930(a)(6).  Additionally, the Liquidating Trustee shall file any quarterly reports in the Lead Case regarding the Debtors' distributions as required by the Bankruptcy Code.

**12.17   Governing Law**

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, construed, and enforced in accordance with, and subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction.

**12.18   Special Tax Issues**

The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan, shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in Code § 1146.

**12.19   Conflicts Between Plan and Confirmation Order**

In the event the terms of this Plan and the Confirmation Order conflict, the terms of the

{00148534 (5)}      -67-

Confirmation Order shall govern.

RESPECTFULLY SUBMITTED this 2nd day of April, 2019.

                                    SILVERADO STAGES INC.
                                    SILVERADO CHARTER SERVICES, LLC
                                    MICHELANGELO LEASING INC.
                                    SILVERADO STAGES SC, LLC
                                    SILVERADO STAGES CC, LLC
                                    SILVERADO STAGES NC, LLC
                                    SILVERADO STAGES NV, LLC
                                    SILVERADO STAGES AZ, LLC


                                    */s/ Matthew Foster*
                                    Matthew Foster, Chief Restructuring Officer

**APPROVED AS TO FORM AND CONTENT:**

**ALLEN BARNES & JONES, PLC**

By: */s/ MAJ #27311*
      Michael A. Jones
      Philip J. Giles
      Cody D. Vandewerker
      David B. Nelson
      1850 N. Central Ave., Suite 1150
      Phoenix, Arizona 85004
      *Attorneys for Debtors*

**PERKINS COIE LLP**

By: */s/ BAC #26223*
      Bradley A. Cosman
      Jordan A. Kroop
      2901 N. Central Ave., Suite 2000
      Phoenix, AZ 85012
      *Attorneys for Official Committee of Unsecured Creditors*

# Exhibit 1

**UNSECURED CREDITORS' TRUST AGREEMENT**

**AND**

**DECLARATION OF TRUST**

**By and Between**

**SILVERADO STAGES, INC.;**
**SILVERADO CHARTER SERVICES, LLC;**
**MICHELANGELO LEASING INC.;**
**SILVERADO STAGES SC, LLC;**
**SILVERADO STAGES CC, LLC;**
**SILVERADO STAGES NC, LLC;**
**SILVERADO STAGES NV, LLC;**
**SILVERADO STAGES AZ, LLC;**
and

**RESOLUTE COMMERCIAL SERVICES, LLC, by and through Jeremiah Foster,**
**as Trustee**

**Dated April 2, 2019**

This Unsecured Creditors' Trust Agreement and Declaration of Trust ("**Agreement**") dated April 2, 2019, is entered into by and between Silverado Stages Inc.; Silverado Charter Services, LLC; Michelangelo Leasing Inc.; Silverado Stages SC, LLC; Silverado Stages CC, LLC; Silverado Stages NC, LLC; Silverado Stages NV, LLC; and Silverado Stages AZ, LLC; (collectively, the "**Debtors**"), as Trustors, and Resolute Commercial Services, LLC, by and through Jeremiah Foster ("**Trustee**"), as Trustee, for the benefit of the holders of General Unsecured Claims against the Debtors' Bankruptcy Estates (the "**Trust Beneficiaries**").

## RECITALS

A.     The Debtors are debtors-in-possession in the jointly administered Chapter 11 Case No. 2:18-bk-12203-MCW ("**Bankruptcy Cases**"), pending before the Bankruptcy Court for the District of Arizona ("**Bankruptcy Court**"). The Debtors enter into and execute this Agreement in their capacity as the representatives of their bankruptcy estates ("**Bankruptcy Estates**") administered in the Bankruptcy Cases.

B.     On April 2, 2019, the Debtors and Official Committee of Unsecured Creditors filed the *Debtors and Official Committee of Unsecured Creditors' Joint Amended Plan Dated April 2, 2019* (attached to this Agreement as **Exhibit A**, the "**Plan**"). Capitalized terms used in this Agreement and not otherwise defined have the meanings given to them in the Plan.

C.     The Debtors have received the accepting votes necessary to confirm the Plan, and all objections to the Plan have been resolved or overruled. On [_____], 2019, the Bankruptcy Court entered its [*TITLE OF CONFIRMATION ORDER*] confirming the Plan.

D.     Section 4.1 of the Plan provides that on the Effective Date, the Silverado Creditors' Trust ("**Trust**") will be formed subject to this Agreement and vested with all right to the Trust Assets. Also on the Effective Date, the Trustee will begin serving for the benefit of all holders of General Unsecured Claims, consistent with this Agreement.

E.     The primary purposes of the Trust are to: (i) pursue or dispose of the Trust Assets in an orderly and expeditious manner; (ii) pursue or resolve objections to Claims and Disputed Claims; and (iii) make Distributions to the beneficiaries of the Trust in accordance with the Plan.

F.     The Trust is not intended to operate with any objective to continue and engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Trust Assets, and consistent with the purposes of the Trust.

G.     The Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Trustee will operate and maintain the Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

# SECTION 1. ORGANIZATION; ESTABLISHMENT OF LIQUIDATING TRUST

1.1. <u>Name</u>. The Trust will be known as the "Silverado Creditors' Trust," in which name the Trustee may conduct the affairs of the Trust.

1.2. <u>Incorporation of Plan</u>. The Plan and Confirmation Order are incorporated into this Agreement. In the event of any conflict between the Plan and this Agreement, the Plan will control and govern. In the event of any conflict between the Confirmation Order and the Plan or this Agreement, the Confirmation Order will control and govern.

1.3. <u>Declaration and Establishment of Trust</u>. For good and valuable consideration, the receipt of which is acknowledged by the parties to this Agreement, and under the Plan, as of the Effective Date, the Debtors have executed this Agreement and establish the Trust and irrevocably transfer, absolutely assign, convey, sets over, and deliver to the Trustee, and his successors and assigns, any of the Debtors' right, title and interest in and to the Trust Assets in trust to and for the benefit of the Trust Beneficiaries for the uses and purposes stated in this Agreement and in the Plan. The Trustee has all the rights, powers and duties set forth in the Plan and this Agreement and available under applicable law for accomplishing the purposes of the Trust. The Trustee is hereby authorized to file with the Secretary of State of the State of Arizona and any other governmental authorities any documents necessary or helpful to establish the Trust.

1.4. <u>Title to Trust Assets</u>.

(a) The right to receive the Trust Assets is vested in the Trust for the benefit and on behalf of the Trust Beneficiaries. Upon the transfer of any of the Trust Assets, the Trustee will succeed to all of the respective Debtor's right, title and interest in the Trust Assets and Debtor will have no further interest in or with respect to the Trust Assets or this Trust. Except as otherwise provided in the Plan, this Agreement or the Confirmation Order, upon the Effective Date of the Plan, title to the Trust Assets passes to the Trust free and clear of all liens, claims and interests of any person in accordance with Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy Code.

(b) For United States federal and applicable state income tax purposes, the transfer of the Trust Assets to the Trust in accordance with the Plan will be reported as a disposition of the Trust Assets directly to and for the benefit of the Trust Beneficiaries immediately followed by a contribution of the Trust Assets by the Trust Beneficiaries to the Trust for the benefit of the Trust Beneficiaries. The Trust Beneficiaries will be treated as the grantors and deemed owners of the Trust.

1.5. <u>Assignment and Assumption of Certain Liabilities</u>. All Trust Assets transferred to the Trust are subject to the following liabilities:

(a) any expenses, including professional fees and payment to the Trustee for time expended (at his normal hourly billing rate) and costs, incurred and unpaid, or to be incurred, by the Trustee in the performance of his duties under this Agreement; and

(b) any tax liability incurred by the Trust.

1.6.    Appointment of Trustee.    Resolute Commercial Services, LLC, by and through Jeremiah Foster, is appointed the Trustee, effective as of the date that this Agreement becomes effective under Section 9.3 of this Agreement. If Resolute Commercial Services, LLC, by and through Jeremiah Foster is unable to accept the position of Trustee or if a successor trustee is required, then a replacement Trustee may be designated by the Creditor Representatives (defined below) without the approval of the Bankruptcy Court. The parties acknowledge the Bankruptcy Court nevertheless retains jurisdiction to resolve any disputes in connection with the service of the Trustee and his or her successor. If the Creditor Representatives fail to appoint a successor Trustee within 30 days of the occurrence of a vacancy, the outgoing Trustee or counsel to the Trust may petition the Bankruptcy Court for such appointment.

1.7.    Creditor Representatives.    On and after the Effective Date, representatives of the creditors of the Bankruptcy Estates ("**Creditor Representatives**") will exercise and perform the rights, powers, and duties set forth in this Agreement, under the terms specified in this section.

(a)    Appointment and Replacement.    On or prior to the Effective Date, the Committee may, but is not obligated to, designate up to three Persons to act as Creditor Representatives. Upon the death, resignation or refusal to serve of a Creditor Representative designated by the Committee, the remaining individual Creditor Representatives designated may appoint a replacement by majority vote. If, at any time from and after the Effective Date, there are no designated Creditor Representatives, then no Persons may act as, or on behalf of the Creditor Representatives.

(b)    Actions of Individual Creditor Representative.    Creditor Representatives have the following rights, powers, and duties:

· To receive the notices and reports provided to be furnished by the Trustee.

· To consult with the Trustee.

· To seek a determination by the Trustee to the extent provided for in this Agreement.

· To seek review by the Bankruptcy Court of a determination or action of the Trustee under this Agreement.

(c)    Employment of Counsel.    The Creditor Representatives may perform their duties and seek review by the Bankruptcy Court as provided in this Agreement with or without the employment of counsel, however the Trust does not have any obligation to pay any of the Creditor Representatives' attorneys' fees.

(d)    Compensation and Exculpation.    The Creditor Representatives will not be entitled to compensation from the Trust for services rendered or any expenses.

Subject to applicable law, a Creditor Representative will not be liable for any act or omission, except to the extent that the act or omission is determined by a court of competent jurisdiction to be the result of gross negligence, fraud, or willful misconduct (this limitation on liability applies equally to the agents, employees, and professionals acting on a Creditor Representative's behalf).

## SECTION 2. <u>BENEFICIARIES</u>

2.1.    <u>Allocation of Interests; Register</u>.

(a)    <u>Allocation of Interests</u>. Each Trust Beneficiary of this Trust will receive uncertified interests in the Trust, which interests will be allocated *Pro Rata* in accordance with the distribution(s) under the Plan to each Trust Beneficiary.

(b)    <u>Register</u>. The Trustee will cause to be kept a register ("**Register**") in which the Trustee will at all times maintain the names, addresses, and interests of the Trust Beneficiaries. In preparing and maintaining the Register, the Trustee may rely on the name and address of each Trust Beneficiary as set forth in the respective schedules filed with the Bankruptcy Court, any Orders of the Bankruptcy Court, or set forth in a proof of claim filed by such Trust Beneficiary in the Bankruptcy Cases. Each Trust Beneficiary is responsible for providing the Trustee with corrections or updates to the names, addresses, and interests information appearing in the Register; all such corrections and updates are subject to final acceptance by the Trustee and are not effective until appearing in the Register.

2.2.    <u>Rights of Trust Beneficiaries</u>.  Each Trust Beneficiary will be entitled to participate in the rights due to a Trust Beneficiary under this Agreement. Each Trust Beneficiary will take and hold its uncertificated beneficial interest subject to all of the terms and provisions of this Agreement and the Plan. The interest of a Trust Beneficiary of the Trust is in all respects personal property, and upon the death, insolvency or incapacity of an individual Trust Beneficiary, such Trust Beneficiary's interest will pass to the legal representative of such Trust Beneficiary and such death, insolvency or incapacity will not terminate or affect the validity of this Agreement. A Trust Beneficiary will have no title to, right to, possession of, management of, or control of, the Trust Assets except as expressly provided in this Agreement or the Plan. Title to all the Trust Assets is vested in the Trustee, and the sole interest of the Trust Beneficiaries are the rights and benefits given to such persons under this Agreement.

2.3.    <u>Limit on Transfer of Interests of Trust Beneficiaries</u>.

(a)    The interest of a Trust Beneficiary in the Trust may be transferable, upon reasonable notice to, and subject to any reasonable limitations placed on the transfer by the Trustee, provided, however, that:

(i)    Trust Beneficiaries may transfer their uncertificated interests in the Trust only in their entirety, and may not transfer fractional portions of their interests; and

(ii)    the Trustee need not reflect any transfer (or make any distribution to any transferee) and will give notice to such Trust Beneficiary that no transfer has been recognized in the event the Trustee reasonably believes that such transfers (or the distribution to such transferee) may constitute a violation of applicable laws or might cause the Trust to be required to register beneficial interests under the Securities Exchange Act of 1934, as amended.

(b)    Prior to any transfer, assignment, hypothecation, pledge, exchange or conveyance of a beneficial interest in the Trust (each, a "**Transfer**"), the transferring Trust Beneficiary must submit to the Trustee a duly endorsed assignment of the beneficial interest to be transferred (in a form reasonably acceptable to the Trustee) together with the service charge, if any, to be specified by the Trustee under this subsection (b). No such Transfer will be effected until, and the transferee will succeed to the rights of a Trust Beneficiary only upon, final acceptance and registration of the Transfer by the Trustee in the Register. Prior to the registration of any Transfer by a Trust Beneficiary, the Trustee will treat the entity in whose name the beneficial interest is registered as the owner for all purposes, and the Trustee is not be affected by notice to the contrary. When a request to register the Transfer of a beneficial interest is presented to the Trustee, the Trustee will register the Transfer as requested if the requirements for Transfers under this Agreement are met. The Trustee may charge a service charge in an amount sufficient to cover the expenses of the Trustee and its agents and any tax or governmental charge that may be imposed on any Transfer of a beneficial interest. Failure of any Trust Beneficiary to comply with these provisions will void any transfer of the related beneficial interest, and the proposed transferee will have no rights under this Agreement. Upon the Transfer of a transferring Trust Beneficiary's entire beneficial interest in the Trust as evidenced by the Register, such transferring Trust Beneficiary will have no further right, title or interest in the Trust Assets or the Trust.

2.4.    <u>No Legal Title in Trust Beneficiaries</u>. No Trust Beneficiary has legal title to any part of the Trust Assets. No Transfer, by operation of law or otherwise, of the right, title and interest of any Trust Beneficiary in and to the Trust Assets or the Trust will operate to terminate this Trust or entitle any successor or transferee of such Trust Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust Assets.

**SECTION 3.  <u>PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES.</u>**

3.1.    <u>Purpose of the Trust</u>.  The primary purposes of the Trust are to: (i) pursue or dispose of the Trust Assets in an orderly and expeditious manner; (ii) pursue or resolve objections to Claims and Disputed Claims; and (iii) make Distributions to the beneficiaries of the Trust in accordance with the Plan. Accordingly, the Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Trust Assets, and consistent with the purpose of the Trust.

3.2.    <u>Authority</u>.  In connection with the administration of the Trust, except as set forth in this Agreement, the Trustee is authorized to and will perform, in good faith, any and all acts necessary or desirable to accomplish the purposes of the Trust, and to take such

actions, in good faith, as are required in his capacity as Trustee. Subject to any limitations contained in, or as otherwise provided by this Agreement or in the Plan, the Trustee has the following powers, authorities, and duties:

(a) To execute, and carry out the responsibilities set forth in, any Plan documents, including any contracts, instruments, releases and other agreements or documents necessary to consummate the transactions contemplated in the Plan or otherwise necessary to effect and further evidence the terms and conditions of the Plan and the documents identified or listed in the Plan, or otherwise identified as exhibits in or to any Plan supplement;

(b) to collect, receive, hold, manage, invest and distribute any and all money and other property which are Trust Assets and to give full discharge and acquaintance for such property;

(c) to retain and set aside funds out of the Trust Assets as the Trustee deems necessary or appropriate to pay, or provide for the payment of: (i) the unpaid liabilities, debts or obligations of the Trust, (ii) contingencies, and (iii) the expenses of administering the Trust Assets;

(d) engage in, intervene in, prosecute, join, defend, compound, settle, compromise, abandon or adjust, by arbitration or otherwise, the Avoidance Actions or Causes of Action included in the Trust Assets, all in the name of the Trust if necessary or appropriate, and all in the Trustee's sole discretion and best business judgment;

(e) to assign the Trust's rights under the Plan;

(f) to file any and all documents and take any and all such other action as the Trustee, in its sole judgment, may deem necessary in order that the Trustee may lawfully carry out the purposes of the Trust in any jurisdiction;

(g) to review any Claims and file or litigate objections to the allowance of any such Claims and seek to estimate them and to prosecute, enforce, compromise, settle or release such Claims, in the Trustee's sole discretion and best business judgment;

(h) to pay and discharge any costs, expenses, professional fees or obligations deemed necessary to preserve or enhance the liquidation value of the Trust Assets, discharge duties under the Plan, or perform the purpose of the Plan and this Agreement; payment of such fees and expenses will not require Bankruptcy Court approval;

(i) to open and maintain bank accounts and deposit funds, draw checks and make disbursements in accordance with the Plan and this Agreement;

(j) to select and engage such Persons, and select and engage such professional advisors, including, without limitation, any Professional previously

retained by the Debtors or the Committee, in accordance with the terms of the Plan and the Agreement, as the Trustee deems necessary and desirable to assist the Trustee in fulfilling its obligations under this Agreement and the Plan and pay the reasonable fees of such Persons and reimburse such Persons for their reasonable out-of-pocket costs and expenses upon approval of the same by the Trustee;

(k) to in general, without in any manner limiting any of the foregoing, deal with the Trust Assets or any part or parts of the Trust Assets in all other ways as would be lawful for any Person owning the same, but in all events subject to and consistent with the terms of this Agreement and the Plan;

(l) to obtain and pay for insurance coverage relative to the proper performance of its duties under the Plan and this Agreement, and to provide indemnification for itself and others provided for in this Agreement;

(m) to establish and maintain any accounts, and establish such additional reserves, funds, and accounts out of the Trust Assets as may be necessary for carrying out the provisions of this Agreement which are consistent with the terms of the Plan;

(n) to appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan or the Trust;

(o) have the right to seek Bankruptcy Court approval of any action to be undertaken by the Trust;

(p) file or cause to be filed, if necessary, any and all tax and information returns, and any other statements or disclosures relating to the Trust that are required to be filed by any governmental unit with respect to the Trust, and withhold and pay taxes properly payable by the Trust, if any;

(q) determine and satisfy any and all liabilities created, incurred or assumed by the Trust;

(r) pay all expenses and make all other payments relating to the Trust Assets, including without limitation, the reasonable fees and expenses of the Trustee subject to the limitations of Section 4.4 of this Agreement;

(s) enforce, waive or release rights, privileges or immunities of any kind;

(t) request any appropriate tax determination with respect to the Trust, including, without limitation, a determination under Section 505 of the Bankruptcy Code;

(u) seek the examination of any person or entity under, and subject to, the provisions of Bankruptcy Rule 2004;

(v) abandon any Trust Assets, including any Avoidance Actions or Causes of Action, which the Trustee determines in its reasonable discretion, after taking into account the potential expense, delay and uncertainty of any litigation, to be of *de minimis* value or otherwise burdensome to the Trust;

(w) except as otherwise set forth in this Agreement or in the Plan, and subject to any regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Trustee is entitled to seek such orders, judgments, injunctions and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan; and

(x) without limitation, to do any and all things necessary to accomplish the purposes of the Plan and this Agreement.

3.3. <u>Duties of the Trustee</u>. Without limiting the power and obligations set forth in Section 3.2 of this Agreement, subject to any limitation contained in, or as otherwise provided by this Agreement or in the Plan, the Trustee, in its capacity as Trustee, has the additional duties, and all requisite power and authority set forth below in this Section 3.3:

(a) <u>Authority to Establish Reserves and Make Distributions</u>. Prior to reserving any portion of Cash held by the Trustee that in an exercise of his or her reasonable discretion, and as may be required pursuant to this Agreement or the Plan should be withheld on account of projected expenses of administration or on account of Disputed Claims ("**Reserves**"), or making any Distributions contemplated under this Agreement, the Trustee will satisfy or reserve for any expenses, including professional fees and payment to the Trustee for time expended (at its normal hourly billing rate) and costs, incurred and unpaid, or to be incurred, by the Trustee in the performance of his duties pursuant to this Agreement. In determining the appropriate amount of such Reserves and Distributions as are contemplated under this Agreement, the Trustee will maintain such Reserves and make such Distributions from the Cash proceeds of Trust Assets to the extent deemed reasonably necessary in order to preserve the legal status of the Trust as a "grantor trust" for federal income tax purposes.

(b) <u>Distributions to Trust Beneficiaries</u>. To the extent the Trustee has monies remaining after paying or reserving for the expenses identified in Section 3.3(a) above, the Trustee may make distributions to the Trust Beneficiaries.

(c) <u>Issuance of Checks</u>. Checks issued by the Trustee with respect to Allowed Claims will be null and void if not negotiated within three months after the date of issuance. Requests for reissuance of any check must be made directly to the Trustee by the Person to whom such check originally was issued. Any such requests must be made on or before four months of the date of issuance of the particular check. After such date, all Claims in respect of void checks are discharged and forever barred.

(d)     Timing of Distributions.   Trustee will establish such Reserves and make distributions to the Trust Beneficiaries not less often than on the one-year anniversary of the Effective Date and the next four anniversaries thereafter.

(e)     Distributions from and to Reserves. The Trustee will retain appropriate Reserves, to the extent monies are available to do so, with respect to Disputed Claims until they are either Allowed Claims or disallowed by a Final Order of the Bankruptcy Court, and such other Reserves as the Trustee deems necessary in its reasonable judgment.

(f)     Maintenance of Distribution Lists.   The Trustee will maintain separate records of the names and addresses of all holders of Allowed Claims and all holders of Disputed Claims. The Trustee may rely upon this record for the purposes of delivering distributions or notices. In preparing and maintaining this record, the Trustee may rely on the name and address of each holder of a Claim set forth in the respective schedules filed with the Bankruptcy Court, any Orders of the Bankruptcy Court or set forth in a proof of claim filed by such holder in the Bankruptcy Cases. Each holder of a Claim is responsible for providing the Trustee with corrections or updates to their names and addresses; all such corrections and updates are subject to final acceptance and acknowledgement by the Trustee.

(g)     Maintenance of Proceeds and Cash.   The Cash collected subsequent to the Effective Date and Cash to be reserved by the Trustee will be maintained by the Trustee in interest-bearing bank accounts, deposits, or as permissible under Section 345 of the Bankruptcy Code.

(h)     Reports to Trust Beneficiaries. The Trustee will provide such reports as are described in Section 7 of this Agreement.

(i)     Tax Returns.

(i)     The Trustee will cause the timely preparation, distribution and/or filing of any necessary tax returns and other documents or filings as required by applicable law (including but not limited to (a) those under Treasury Regulation 1.671-4(a), including, without limitation, Form 1041 related statements; and (b) pertaining to the Trust by virtue of its existence and operations. The Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Trust Beneficiaries in accordance with their relative beneficial interests in the Trust.

(ii)     Subject to definitive guidance from the Internal Revenue Service or court of competent jurisdiction to the contrary, the Trustee may:

(A)     Treat any assets in the Reserves allocable to, or retained on account of, Disputed Claims, as held by one or more discrete trusts for federal income tax purposes ("**Claims Reserve**"), consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the Tax Code (Section 641 *et seq*.);

(B)     treat as taxable income or loss of the Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of

the Trust that would have been allocated to the Holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved);

(C)     treat as a distribution from the Claims Reserve any increased amounts distributed by the Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Claims Reserve determined in accordance with the provisions of the Plan; and

(D)     to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes.

(iii)     In accordance with the Plan, all holders of beneficial interests in the Trust will report, for tax purposes, consistent with the foregoing.

(iv)     The Trustee will pay (a) out of the Trust Assets, any taxes imposed on the Trust or the Trust Assets and (b) out of the Claims Reserve, any taxes imposed on the Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes will be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Trustee as a result of the resolutions of such Disputed Claims.

3.4.     <u>Consultation with Creditor Representatives</u>.   In the discharge of its duties under this Agreement, the Trustee may, from time to time and as he or she deems reasonable, consult with the Creditor Representatives as they then may be constituted, provided, however, the Trustee has sole decision-making authority as trustee of the Trust. Upon receipt of a written request from the Creditor Representatives for a determination of a matter within the administration of the Trust, the Trustee will take such actions as he determines are reasonable to resolve such request. Finally, in the event that the Creditor Representatives seek review by the Bankruptcy Court of a determination or action of the Trustee, the Trustee will respond to, appear on account of, and participate in such proceedings as may be required by the Bankruptcy Court for resolution of such request for review.

3.5.     <u>No Implied Obligations</u>. Except as otherwise specifically provided in the Plan, Confirmation Order, or this Agreement, no other further covenants or obligations will be implied into this Agreement. The Trustee is not responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty in this Agreement, or in any document or instrument evidencing or otherwise constituting a part of the Trust Assets.

3.6.     <u>Unknown Property and Liabilities</u>. The Trustee is responsible for only that property delivered to the Trust, and has no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

3.7. <u>Compliance with Laws</u>. Any and all distributions of Trust Assets and proceeds of borrowings, if any, will be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

## SECTION 4. <u>THE TRUSTEE</u>

4.1. <u>Generally</u>.

(a) The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Agreement and the Trust it creates and not otherwise, except that the Trustee may arrange for payment of its reasonable fees and expenses from the Trust Assets as permitted in this Agreement.

(b) The provisions of this Agreement relating to the Trust are intended to create a trust and a trust relationship and are to be governed and construed in all respects as a trust. The Trust is not intended to be, and will not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association. Neither the Trustee nor Trust Beneficiaries will be, or be deemed to be or treated in any way whatsoever to be, liable or responsible under this Agreement as partners or joint venturers. The relationship of the Trust Beneficiaries to the Trust and the Trustee is solely that of beneficiaries of a trust to a trust and its trustee, and is not a principal and agency relationship. The rights of the Trust Beneficiaries are limited to those conferred upon them by this Agreement.

4.2. <u>Manner of Acting</u>. The Trustee will oversee the liquidation of the Trust Assets in good faith, in a cost-effective manner, and in a reasonably timely fashion, with due regard for the risk that undue litigation may minimize the distributable proceeds of the Trust. The Trustee will make continuing efforts to dispose of the Trust Assets, make timely distributions and not unduly prolong the duration of the Trust. In overseeing the Trust Assets, or otherwise monetizing them, the Trustee will use his or her best efforts to maximize the amount of the proceeds derived from the Trust Assets. The Trustee's liquidation of the Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims, rights, or Causes of Action, or otherwise subject to the terms of the Plan. Any and all proceeds generated from such Trust Assets will be held by the Trust. The Trustee may incur any reasonable and necessary expenses in liquidation the Trust Assets.

4.3. <u>Avoidance Actions and Causes of Action.</u> The Trustee has discretion to pursue or not to pursue any and all Avoidance Actions or Causes of Action as it determines are in the best interests of the Trust Beneficiaries and consistent with the specific authority of the Trustee. With respect to any Avoidance Action or Cause of Action, the Trust and the Trustee are bound by, and will give effect to, any release, exculpation, waiver, estoppel or injunction, including, without limitation, any of the foregoing, provided by the Plan or the Confirmation Order.

4.4.   Compensation and Reimbursement of Trustee and Professionals.

(a)    The Trustee may be compensated for services rendered in the administration of the Trust at his or her ordinary hourly rate then in effect for clients in bankruptcy matters. The Trustee may also be reimbursed for actual and reasonable out-of-pocket expenses incurred. The Trustee will provide periodic statements of fees and expenses incurred to the Creditor Representatives. All fees will be paid and expenses reimbursed from the proceeds of liquidation of Trust Assets and/or from funds held by the Trust. Any disputes over compensation for services rendered or reimbursement of expenses are subject to review of the Bankruptcy Court upon request of the Creditor Representatives or Trust Beneficiaries.

(b)    Any Professionals retained by the Trustee will be entitled to reasonable compensation for services rendered at a rate reflecting actual time billed by such Professional or entity on an hourly basis, at the standard billing rates in effect at the time of service, or such other hourly rate that is reasonable, and to reimbursement of reasonable out of pocket expenses incurred. All such compensation and reimbursement will be paid in the same manner and subject to the same review as provided for in Section 4.4(a), above.

4.5.   Tenure, Removal, and Replacement of the Trustee.   The authority of the Trustee will be effective as of the Effective Date and will remain and continue in full force and effect until the termination of the Trust (as described in Section 5.1, below) or earlier if a successor is named by action of the Bankruptcy Court.

4.6.   Continuance of Trust. The death, resignation, or removal of the Trustee will not operate to terminate the Trust created by this Agreement.

4.7.   Discharge of Trustee.

(a)    Statement of Discharge.   Upon termination of the Trust, the Trustee will render a final report ("**Final Report**"), which will contain the following information: (a) all assets and funds of the Trust originally charged under the Trustee's control; (b) all funds transferred into and out of the Reserves; (c) a summarized accounting, in sufficient detail, of all purchases, sales, gains, losses, income, and distributions in connection with the Trust during the Trustee's term of service; and (d) the ending balance of all assets and funds of the Trust as of the date of discharge.

(b)    Approval of Statement of Discharge.   The Trustee's Final Report, will be filed with the Bankruptcy Court along with a motion for approval of the Final Report and discharge of the Trustee, and notice that any objections are due 30 days later. If approved by the Bankruptcy Court, the withdrawing Trustee will be discharged from all liability to the Trust or any entity who has had or may then or thereafter have an interest in the Trust for acts or omissions in the Trustee's capacity as the Trustee or in any other capacity contemplated by this Trust Agreement.

**SECTION 5.  DURATION OF THE TRUST**

5.1.    Duration of the Trust.  The Trust will terminate on the later of the liquidation of all assets of the Trust and payment or distribution of all funds required to be paid under the terms of the Plan or this Agreement, or the date which is five years after the Effective Date. Notwithstanding the foregoing, the Trustee may, if it is in the best interest of the Trust Beneficiaries, and subject to the approval of the Bankruptcy Court based on a finding that an extension is necessary to the purpose of the Trust, extend the term of the Trust for one or more finite periods based upon the particular facts and circumstances at that time (each, an "**Extension Period**"), provided that each Extension Period is requested by the Trustee before expiration of the Trust term (as it may then have been extended).

5.2.    Continuance of the Trust for Winding Up.  After the termination of the Trust, as it may then have been extended, and for the purpose of liquidating and winding up the Trust's affairs, the Trustee will continue to act as such until he or she has fully executed his or her duties under the Plan and this Agreement. Upon distribution of the entire Trust Assets, and unless ordered otherwise by the Bankruptcy Court, the Trustee will retain for a period of one year the books, records, Trust Beneficiary lists, Register, and certificates and other document and files that were delivered to or created by the Trustee.  Subject to the Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after one year from the completion and winding up of the affairs of the Trust. Except as otherwise specifically provided in this Agreement, upon the discharge of all liabilities of the Trust, and final distribution of the entire Trust Assets, the Trustee will have no further duties or obligations under this Agreement.

**SECTION 6.  INDEMNIFICATION; LIMITATIONS ON LIABILITY**

6.1.    General Indemnification.  The Trust will indemnify and hold harmless any Person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such Person is or was the Trustee or an employee of the Trust, or an employee, contractor, agent, attorney, accountant or other professional for the Trustee, against all costs, expenses, judgments, fines and amounts paid in settlement actually and reasonably incurred by such Person in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent, except to the extent such liability is determined to be the result of such entity's willful misconduct, fraud or gross negligence. Costs or expenses incurred by any such entity in defending any such action, suit or proceeding may be paid by the Trust in advance of the institution or final disposition of such action, suit or proceedings, if authorized by the Trustee.

6.2.    Limited Recourse.  Except as provided in the Plan and this Agreement, no recourse may ever be had, directly or indirectly, against the Trustee personally or against any employee, contractor, agent, attorney, accountant or other professional retained by the Trustee in accordance with the terms of this Agreement or the Plan, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the

Trustee in implementation of this Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by this Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Trust, whether in writing or otherwise, is enforceable only against and may be satisfied only out of the Trust Assets and is evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for his or her gross negligence, fraud or willful misconduct.

6.3. <u>Limited Liability</u>. The Trustee is not liable while acting in good faith and in the exercise of his reasonable judgment for any act he or she may do or omit to do as the Trustee, provided, however, that the Trustee may be held personally liable for acts or omissions constituting gross negligence, fraud, or willful misconduct.

## SECTION 7. <u>REPORTS TO BENEFICIARIES</u>

7.1. <u>Tax and Other Reports to Trust Beneficiaries.</u>

(a) <u>Calculations; Source of Distributions</u>. The Trustee will maintain detailed records of (i) the calculations performed by the Trustee in respect of any reserves, distributions and disbursements made related to the Trust and (ii) the accounts from which any such distributions or disbursements were made. The Trustee's records will be sufficient to enable determination, among other things, of whether such distributions and disbursements made by the Trustee were in compliance with the terms of the Plan and this Agreement.

(b) <u>Tax Reporting</u>. Following the end of each calendar year, the Trustee will promptly submit to each Trust Beneficiary appearing in its records during such year a separate statement setting forth the information necessary for such Trust Beneficiary to determine its share of items of income, gain, loss, deduction, or credit and will instruct each Trust Beneficiary to report such items on its federal income tax returns (and state and local tax returns, as applicable).

## SECTION 8. <u>AMENDMENT AND WAIVER</u>

The provisions of this Agreement may only be amended by action of the Bankruptcy Court.

## SECTION 9. <u>MISCELLANEOUS PROVISIONS</u>

9.1. <u>Intention of Parties to Establish Trust</u>. This Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, will be governed and construed in all respects as such a trust and any ambiguity in this Agreement will be construed consistent that intent. If necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

9.2. <u>Preservation of Privilege and Defenses</u>. To the full extent permitted by law, the Debtors will be deemed to irrevocably transfer to the Trustee, as their legal successor, all rights of Debtors and the Estates to exercise or waive any attorney-client privilege,

accountant-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral), and Debtors and the Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

9.3.    Effectiveness.  This Agreement will become effective upon the occurrence of the following events:

(a)    Approval by the Bankruptcy Court of this Agreement, whether on its own or as part of the Plan; and

(b)    Satisfaction of all conditions precedent to the occurrence of the Effective Date of the Plan.

9.4.    Counterparts.  This Agreement may be executed in one or more counterparts, all of which will be taken together to constitute one and the same instrument.

9.5.    Governing Law.  Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, this Agreement is governed by, construed under, and interpreted in accordance with, the laws of the State of Arizona, without giving effect to conflict-of-law principles.

9.6.    Severability of Provisions.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction will, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provision of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

9.7.    Entire Agreement.  This Agreement (including the Recitals), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations except as set forth in this Agreement, the Plan, and Confirmation Order. This Agreement, the Plan, and the Confirmation Order supersede all prior agreements, understandings, negotiations, discussions, written or oral, of the parties to this Agreement relating to any transaction contemplated under this Agreement. Except as otherwise specifically provided in this Agreement, in the Plan, or in the Confirmation Order, nothing in this Agreement is intended or will be construed to confer upon or to give any entity other than the parties to this Agreement and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Agreement. This Agreement is not intended nor will it be construed to limit or grant any additional powers and duties upon the Trustee appointed under the Plan and Confirmation Order. In the event, of any conflict between this Agreement and either the Plan or Confirmation Order with regard to the duties or powers of the Trustee, the Plan and Confirmation Order control over this Agreement.

9.8.    Effect of Death, Incapacity or Bankruptcy of Trust Beneficiary.  The death, incapacity, or bankruptcy of a Trust Beneficiary during the term of this Agreement will not operate to terminate the Agreement, nor will it entitle the representatives or creditors of the deceased Trust Beneficiary to an accounting, or to take any action in the courts or elsewhere

for the distribution of the Trust Assets or for a partition of the Trust Assets, nor will it otherwise affect the rights and obligations of any Trust Beneficiary.

9.9. <u>Effect of Trust on Third Parties</u>. There is no obligation on the part of any purchaser or purchasers from the Trustee or any agent of the Trustee, or on the part of any other entities dealing with the Trustee or any agent of the Trustee, to see to the application of the purchase money or other consideration passing to the Trustee or any agent of the Trustee, or to inquire into the validity, expediency or propriety of any such transaction by the Trustee or any agent of the Trustee.

9.10. <u>Waiver</u>. No failure or delay of any party to exercise any right or remedy under this Agreement will affect such right or remedy or constitute a waiver by such party of any right or remedy. Resort to one form of remedy will not constitute a waiver of alternative remedies.

9.11. <u>Tax Identification Numbers</u>. The Trustee may require any Trust Beneficiary to furnish to the Trustee (a) its employer or taxpayer identification number as assigned by the Internal Revenue Service, and (b) such other records or documents necessary to satisfy the Trustee's tax reporting obligation (including, but not limited to, certificates of non-foreign status). The Trustee may condition the payment of any distribution to any Trust Beneficiary upon receipt of such identification number and requested documents.

9.12. <u>Headings</u>. The Section headings contained in this Agreement are solely for convenience of reference and do not affect the meaning or interpretation of this Agreement or of any term or provision of this Agreement.

9.13. <u>Rules of Construction</u>. Except as otherwise expressly provided in this Agreement or unless the context otherwise clearly requires:

(a) References to designated sections and other subdivisions of this Agreement, such as "Section 1.4(b)," refer to the designated Section or other subdivision of this Agreement as a whole and to all subdivisions of the designated Section or other subdivision.

(b) Any term that relates to a document or a statute, rule, or regulation includes any amendments, modifications, supplements, replacements or any other changes that may have occurred since the document, statute, rule, or regulation came into being, including changes that occur after the date of this Agreement.

(c) Any party may perform any of the requirements under this Agreement either directly or through others, and the right to cause something to be done rather than doing it directly is implicit in every requirement under this Agreement. Unless a provision is restricted as to time or limited as to frequency, all provisions under this Agreement are implicitly available from time to time.

(d) The term "including" and all its variations mean "including, but not limited to." Except when used in conjunction with the word "either," the word "or" is always used inclusively (for example, the phrase "A or B" means "A or B or both," not "either A or B but not both").

(e)     All accounting terms used in an accounting context and not otherwise defined are to be construed in accordance with generally accepted accounting principles.

(f)     In the computation of a period from a specified date to a later specified date or an open-ended period, the word "from" means "from and including" and the words "to" or "until" mean "to and including." Likewise, in setting deadlines or other periods, "by" means "on or before," and "after" means "from and after."

**TRUSTEE:**

By _____

**DEBTORS:**

**SILVERADO STAGES INC.**

By:_____
Name:
Its:

**SILVERADO CHARTER SERVICES, LLC**

By:_____
Name:
Its:

**MICHELANGELO LEASING INC.**

By:_____
Name:
Its:

**SILVERADO STAGES SC, LLC**

By:_____
Name:
Its:

**SILVERADO STAGES CC, LLC**

By:_____
Name:
Its:

{00159713 2}                              17
143114846.1

**SILVERADO STAGES NC, LLC**

By:_____
Name:
Its:

**SILVERADO STAGES NV, LLC**

By:_____
Name:
Its:

**SILVERADO STAGES AZ, LLC**

By:_____
Name:
Its:


<u>**APPROVED AS TO FORM AND CONTENT:**</u>


By:_____
    Michael A. Jones, Esq., Counsel for the Debtors

**EXHIBIT A**

**Copy of the Plan**

# Exhibit B

## LITIGATION DISCLOSURE

Without limiting the generality of any of the provisions of the Plan or Disclosure Statement,[1] the Debtors identify the following types of Causes of Action, to the extent not previously expressly released, settled or compromised, that are preserved by the Debtors, the Estates, and the Liquidating Trust, and over which it is anticipated that the Bankruptcy Court will exercise continuing subject matter jurisdiction after the Effective Date of the Plan:

- Claims Related to Certain Transfers:  Causes of Action under Code §§ 544, 547, 548, 549, 550, 551, 553 and any other provisions and applicable non-bankruptcy law pursuant to which a trustee may seek to avoid and recover payments or other transfers.

- Claims Related to Accounts Receivable, Loans, and Accounts Payable:  Causes of Action against or related to any entity that owes, or that may in the future owe, money to any of the Debtors or the Estates or who may assert that they have reduced any indebtedness to the Debtors or the Estates through offset or recoupment.  Furthermore, the Debtors expressly reserves all Causes of Action against or related to any entity who asserts or may assert that the Debtors or the Estates owe money to such entity.

- Claims Related to Insurance Policies:  Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies, and occurrence contracts to which any Debtor or Estate is a party or pursuant to which any Debtor or Estate has any rights whatsoever, including Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or any other matters.

- Claims Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings:  Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, diminution in collateral value, scope or extent of replacement liens, or any other type of deposit or collateral.

- Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation:  All claims, defenses, crossclaims, and counterclaims against or related to all entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial.  This includes, without limitation, all Causes of Action and pending litigation identified in the Schedules of Assets and Liability ("Schedules") and the Statement of Financial Affairs ("SOFA") filed by each of the Debtors (as amended).

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

- <u>Claims Related to Contracts</u>:  Causes of Action based in whole or in part upon any and all contracts or leases to which any Debtor or any Estate is a party or pursuant to which any Debtor or any Estate has any rights whatsoever.  The claims and Causes of Actions reserved include, without limitation, Causes of Action against vendors, suppliers of goods or services, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with anyone or more of the Debtors before the assumption or rejection, if applicable, of such contracts;(d) for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party;(e) for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by anyone or more of the Debtors; (f) counterclaims and  defenses related to any contractual obligations; (g) any turnover actions arising under Code §§ 542 or 543; (h) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims; and (i) any accumulated service credits, both those that may apply to future vendor invoices and those from which the Debtors may be entitled to receive a refund.

- <u>Claims Related to Other Obligations</u>:  Causes of Action against or related to all vendors, purchasers, or distributors of stored value cards, that owe or may in the future owe money to the Debtors or the Estates, whether for unpaid invoices or any other matter whatsoever.

Without limiting the generality of any of the provisions of the Plan or Disclosure Statement, the Debtors hereby identify potentially liable parties with respect to preserved Litigation and Causes of Action, to the extent not previously expressly released, settled or compromised.  Such potentially liable parties include, without limitation:  (i) the entities listed below; (ii) all entities listed, or entities related to any claims or actions listed, in the Debtors' respective SOFA's, as amended, including in Part 2, Part 3, Part 6, or Part 13 thereof; and (iii) all entities listed, or entities related to any claims or actions listed, in the Debtors' respective Schedules, as amended, including in Schedule B (Parts 3 and 11), G, or H thereof.

Except as otherwise expressly released under the Plan or Confirmation Order, any entity that has transacted business with the Debtors or the Estates, or made a transfer to or received a transfer from any of the Debtors or the Estates, should assume that any obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date of the Plan and may be the subject of an action after the Effective Date, regardless of whether such entity is expressly listed as a potentially liable party.

Potentially liable parties include, without limitation, the following:

1st Source Bank
350 S. Rock Blvd., LLC
4444 W. Sunset Rd., LLC
6165 S. Decatur Blvd., LLC
8X8 INC.
91-EL-LGBS
9201 Campo Rd., LLC
A+ Career Apparel
AAA East Central Product Devel
Academy National Tours
Adventure Caravans
AlvordScho c/o Tina Strand
Amanda Matias
Amelia Romero dba/Romero's Super Wash
American Christian Tours
American Explorer Motorcoach
American Express
American Nomadic Tours LLC
American Water Treat
AmeriGas Propane
Anna Waclawiczek
Anne Slocum
Anthony Fiorini
Anthony Travel, LLC dba On Location Eve
AquaPerfect, LLC
AR & ES Agency
Aristocrat Technologies, Inc.
Arizona Board of Regents/ASU
Arizona Corporate Coach
Arizona Department of Revenue
Arizona Public Service
Arizona State University
Arrow Stage Lines - Corp Travel N Tours
ASU Barrett College West
ASU Ira A. Fulton Schools of Engineering
ASU-School of Social Transformation
AT&T

Matt Kelly Elementary School
Maureen Dennis
Max Aviation, LLC
Mayflower Tours
MCINTOSH COMMUNICATIONS, INC.
McLeod Racing LLC
MedStop Urgent Care Center
Mercedes-Benz Financial Services USA LLC
Merryhill Schools
Metropolitan Shuttle
Michael Sondron
Mike Watson
Minot State University
Mission Support and Test Services, LLC
MOH Management, LLC
Motel 6
Mountain Spring Water of S.B,. Inc.
Mr Dawson
Mr Mok
Mr Unruh
Mr Winters
Ms McGilloway
MWT International
National Benefit Services, LLC
National Bus Trader, Inc.
National Council Clubs
Nat'l Railroad Passenger Corp/AMTRAK
Natomas Charter School
NC Industries, LLC
Neil C. Twitchell Elementary S
Network Environmental Systems
Nevada Department of Taxation
Nevada Department of Transportation
Nevada Division of Environmental Protec
New Mexico Taxation and Revenue Dept.
New Roads School

| | |
|---|---|
| Atlas Disposal Industries, LLC | New World Classics |
| Attila Lovasz | Nicholas Harris c/o CA State Labor Comm |
| Availe, Inc. | Nineveh Holdings, LLC |
| B. Mahlon Brown JHS | NV Energy |
| Balboa Capital | Occupational Health Centers ofSouthwest |
| Balboa Transportation Services | Occupational Health Centrs of CA, A Med |
| Bank of America | Oceanic West, Inc. |
| Bank of the West | Ogletree, Deakins |
| Berkshire Hathaway Homestate Companies | ONELEGACY |
| Bill Johnson | OnTrac |
| Blackhawks Soccer Club | OpenPath Investments, LLC |
| Blue Cross Blue Shield of Arizona | Orange Belt Stages |
| BMO Equipment Finance | Pacific Christian |
| BOMA International | Pacific Gas & Electric |
| Bonner Elementary School | Pacific Premier Bank |
| Boulder City Hospital Foundati | Pacific Western |
| Bowlero Corp | Palo Verde High School |
| Boys and Girls Club of Metro Phoenix | Palos Verdes Pen. USD |
| Brooksee, LLC | Panama Buena Visa USD |
| Bryan Fried | Paul's Dry Cleaners |
| Buchalter, A Professional Law Corporation | People's Capital and Leasing Corp. |
| Buckingham Charter Magnet High School | Pepperdine University |
| Bus & Motorcoach News | Personal Enrichment Program |
| Bus & Truck Service, Inc. | Personal Wedding |
| Bus Quote USA | Pickerington High School Band |
| BUS USA | Point Blank Enterprises, Inc. |
| CAD Service Co. | POINT OF SAN LUIS LIGHTHOUSE |
| Cal Poly Kappa Alpha Theta | Pressure Systems Inc./ dba Mist Air |
| California Board of Equalization | Prestige Travel & Cruises |
| California Department of Taxation | PrimeSport |
| California Dept. of Tax & Fee Admin | Protective Insurance Company |
| California Office of Tourism | Public Utilities Commission-State of CA |
| California State University | Puretec Industrial Water dba/J,Harris I |
| Casino Cruise Line | Quality Grading & Paving, Inc. |
| Caterpillar Engine Settlement Admin | Raceaway |
| Centennial High School | Radisson Hotels |
| Central Christian Church | Ramos Oil Company, Inc. |
| Central Coast Health and Hospice | Rancho Bernardo Community Church |

Chase Bank
Christ's Church Of The Valley/
Church of Jesus Christ of Latter-Day Sts
Cintas Corporation No. 2
Citi Cards
City of Beverly Hills
City Of Las Vegas
City of North Las Vegas
City of North Las Vegas Utilities Dept.
City of Sacramento
City of San Diego
City of San Jose
Clark County Department of Aviation
Coastal Business Finance
Comcast
Commissions Inc
Concentra – Phoenix
Coral Academy of Science
Corporate Finance Associates
Corvel Corp.
Cox Communications
Crum & Forster Insurance
Crystal Guth
Crystal Springs Water Company
Culinary Workers Union, Local 226
D Moorhouse
Daimler Truck Financial Services
David Razani
Davis Truck Painting
Delmar Eltz
Delta Dental of Arizona
Department of Motor Vehicles
Department of Parks & Recreation
Department of Veterans Affairs
Derek Rustich
Desert Pines High School
Digital West Networks, Inc.
DISA Global Solutions, Inc.

Red Lion Hotel Redding, LLC
Republic Serv-TOR
Revolution CNG, Inc.
Ride Systems
Rincon Band of Luiseno Indians dba
Rincon Band of Luiseno Indians dba Harrah's Resort Southern California
River City Petroleum, Inc.
Riverside Community College District
Road Rebel Entertainment, Inc.
Roberto Landscaping
Robinson Oil Corp.
Rocklin Unified School District
Rolando Carillo Santos Sr.
Rosemary Clark Middle School
Ross Rosborough
Royal Coach
Rveeda D. Cole
Ryjo Tours Inc
Sacramento County Airport System
Saguaro Sabercat Football Foundation
Saia Family Limited Partnership
Saint Kateri
Salt River Indian Community
San Diego Gas & Electric
SAN LUIS GARBAGE, INC
San Luis Mini Storage
San Mateo County
Santa Barbara County Dem Party
Santa Barbara Middle School
Santander Bank NA
SC Fuels
Scott Bogart
Scottsdale Christian Academy
SEAT Planners Inc.
Seat Planners Incorporated
Senior Tripsters
Shadow Ridge High School

Distinctive Systems, Inc.

Dmont

Donnell Roustich

E. Pro Technologies, LLC dba Sensiple

Edco Disposal Corporation

Elite Service Co.

Elite Status Group

Employment Development Department - CA

Equal Employment Opportunity Commission

Equipoise Corporation

Eugene Bronson

Event Source Ministries / Kenn

Everbank

Everbank Commercial Finance, Inc.

Excel Cleaning, Inc.

Executive Inn & Suites dba East Pay Hotel, LP

Expedition America

Falcon Insurance Agency of Arizona

Fantasy RV Tours

Federal Express Corporation

Financial Pacific Leasing, Inc.

FM Tours

Free Spirt Vacations

FrontiersUSA

Gasco

Genuine Parts Co. dba NAPA Auto Parts

George Brian Hunt

Gillian Fiorini

Glenda Taylor

Glenn Burdette

Glow Events

Go Campusing

Go West Tours, Inc.

Greater New Morning Star Missi

Guardian

Hager Pacific Acquisitions, LLC

Heritage Academy Laveen

HireRight, LLC

Sharon Galusha

Siena Commmunity Association

Sigifredo Deharo

Signature Financial

Silvas Oil Company, Inc.

Silverado Stages, Inc. Employee Stock Ownership Trust

Singlepoint Communications

SM Tire, Inc.

SmartStubs Inc.

SMUD

So Cal Gas Co.

Society of Corporate Compliance

Sonitrol of Sacramento, LLC

Sonora Union High School

South California Edison

Sparkletts

SPORTS FAN EXPRESS - ADVANCE TICKETS SOL

St. Andrew The Apostle Catholic Church

St. Francis Electric, Inc.

St. Rose School

State of California

Sterling National

Stewart Transportation

Strategic Debt Initiatives, LLC

Sugar Bowl Academy

Sunrise Acres Elementary School

Sunrise Office Systems, LLC

SunTrust Equipment Finance & Leasing

Susan Schmidt

TCF Equipment Finance

TCF Equipment Inc.

TedTour

The DocuTeam

The Hudson Group

The Leahy Company

Thomas Goodpaster % CA State Labor Comm

Homar R. Zazveta Palma

Honda Financial Services

Hopper Properties, LLC

IlluminaLLC

Image Craft, LLC

inAssist

Incoming America

InMan Group

Internal Revenue Service

Interstate Transport Consulting, Inc.

Iron Mountain

Ironwood High School

IT Support Guys

j2 Cloud Services, LLC dba/ Sfax

J2 Commercial Cleaning

Jack Group

James Galusha

JB Dewar, Inc.

Jeri Youtsey

Jerry's Office Furniture

Jesse Sanchez c/o CA State Labor Comm

Jet Limousines $ Transportation, LLC

Jhills

Jhonny Ignacio Rodriguez Linares

Jim and Sharron Galusha Revocable Trust

JJ Keller & Associates, Inc.

Jodi Bogart

Jody Bogart

John Busskohl

Johnny Ignacio Rodriguez Linares

Jonnum Media

Joseph Uffens

Joyce Rose

Julie Demay Wedding

Kaiser Foundation Health Plan

Kaiya Bellamy

Karl Hovanitz

Kathy Ann Kay

Thomas Petroleum

Thompson Coburn LLP

TIAA Commercial Finance, Inc.

Tom's Christian Tours

Tonia Toutolo

TopDeck USA

Topdeck/DMC Operations USA Inc.

Towne &Country Worldwide Transportation

Translease, Inc.

Transportation Management Services

Transportation Safety Systems

Transportation USA

Travel Incorporated

Tri Commercial Real Estate

Trimble Inc.

Trinity International Schools

TSYS Credit Card Fees

TSYS, Authorize.net, PayPros, PayTrace

Tuolumne Me-Wuk Indian

Turnberry Travel

Turning Point USA

Ultrex

UNIT CHEMICAL CORP.

United States Fire Insurance

Universal Technical institute

University of Arizona

Uriel Altamirano

US Fire Insurance Company

US Premium Finance

USA Student Travel

Utah Department of Transportation

Utah State Tax Commission

VAR Technology Finance

Vector Media

Verizon

VFS Leasing Co.

VFS USA LLC

VIA Adventures, Inc.

Kathy Luiz Group
Kevin Guth
Key Equipment Finance
KEY2ACT
Knights Of Columbus
Kushner and Associates
Lamb of God Lutheran School
Lancer Insurance Company
Landmark Tours, Inc.
Las Vegas Day School
LEFT COAST T-SHIRT COMPANY
Lend Lease
Lindblad Expeditions
Line 1 Communications Inc
Lodi Unified School District
Loomis Basin Charter School
Los Angeles Onnuri Church
Lovasz
Luis Hernandez
M2 (American) Financial
M2 Lease Funds, LLC
Madrivo
Marborg Industries
Massey Group

Vision Service Plan
Volvo Financial Services
Vortex Industries, Inc.
Wageworks, Inc.
Wanderu, Inc.
Waste Management of Arizona
Water Education Foundation
Water lantern Festival
Webster Capital Finance, Inc.
Wells Fargo Equipment Finance, Inc.
Western Alliance Bank
Western States Petroleum, Inc.
Western Turbine Users, Inc
Winthrop Couchot Golubow Hollander, LLP
World of Travel
Worldpay
XTGlobal, Inc.
Zion International Programs
Zions Bancorporation
Ziprecruiter, Inc.
Zwarren