Michael A. Jones, State Bar #27311
Philip J. Giles, State Bar #30340
Cody D. Vandewerker, State Bar #33385
David B. Nelson, State Bar #34100
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email  mjones@allenbarneslaw.com
       pgiles@allenbarneslaw.com
       cvandewerker@allenbarneslaw.com
       dnelson@allenbarneslaw.com

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re:<br><br>SILVERADO STAGES INC., et al.,<br><br>Debtors.<br><br>This filing applies to:<br><br>☒ ALL DEBTORS<br>☐ SILVERADO STAGES INC.<br>☐ SILVERADO CHARTER SERVICES, LLC<br>☐ MICHELANGELO LEASING INC.<br>☐ SILVERADO STAGES SC, LLC<br>☐ SILVERADO STAGES CC, LLC<br>☐ SILVERADO STAGES NC, LLC<br>☐ SILVERADO STAGES NV, LLC<br>☐ SILVERADO STAGES AZ, LLC | Chapter 11<br><br>Case No. 2:18-bk-12203-MCW<br>(Jointly Administered)<br><br>Case No. 2:18-bk-12203-MCW<br>Case No. 2:18-bk-12205-DPC<br>Case No. 2:18-bk-12207-BKM<br>Case No. 2:18-bk-12209-MCW<br>Case No. 2:18-bk-12210-MCW<br>Case No. 2:18-bk-12213-EPB<br>Case No. 2:18-bk-12215-BKM<br>Case No. 2:18-bk-12218-EPB<br><br>**MOTION TO APPROVE STIPULATION FOR SETTLEMENT AND COMPROMISE PURSUANT TO FED. R. BANKR. P. 9019** |
|---|---|

Silverado Stages, Inc., a Wyoming corporation; Silverado Charter Services, LLC, a California limited liability company; Michelangelo Leasing Inc., an Arizona corporation; Silverado Stages SC, LLC, a California limited liability company; Silverado Stages CC, LLC, a California limited liability company; Silverado Stages NC, LLC, a California limited liability company; Silverado Stages NV, LLC, a Nevada limited liability company; and Silverado Stages AZ, LLC, an Arizona limited liability company debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), hereby

request that this Court enter an order approving the *Stipulation for the Allowance and Treatment of the Secured and Unsecured Claim of Western Alliance Bank* (the "**Stipulation**") the Debtors entered into with the Official Committee of Unsecured Creditors ("**Committee**") and Western Alliance Bank ("**Alliance**," and collectively the "**Parties**"). A true and correct copy of the Stipulation is attached hereto as **Exhibit A** and is incorporated by reference. Approval of the Stipulation is in the best interest of the Debtors' bankruptcy estates.

The Debtors request that the Court use a "negative notice" procedure in which interested parties have a twenty-one (21) day period to file objections. If no objections are filed, the Debtors would then be authorized to lodge an order approving the Stipulation. If an objection is filed, the Debtors will request that a hearing be held before the Court. This Motion and the Stipulation are supported by the attached Memorandum of Points and Authorities and by the entire record before the Court in this Chapter 11 case.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  **FACTUAL BACKGROUND.**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors are affiliated entities, share common management, and collectively operated a service-oriented passenger transportation business known as "Silverado Stages."

3. On October 5, 2018 ("**Petition Date**"), the Debtors filed for relief under Chapter 11 of the Bankruptcy Code.

4. Faced with non-renewal of their insurance policies as well as significant year-end expenses, the Debtors determined that an orderly wind down of operations served the best interest of their estates and creditors. The Debtors ceased operations on December 16, 2018.

5. Postpetition, the Committee, the Debtors and Alliance are involved in the following disputes (collectively, the "**Disputes**"):

    a. The Debtors and the Committee dispute Alliance's alleged perfected lien and security interest in certain 2009 VanHool motorcoach collateral ending

in VIN #2334 and #2339 (the "**VanHools**"), including the rights of Alliance to the proceeds of the sale of the VanHools in the amount of $72,076;

b. The Debtors and the Committee assert a claim against Alliance for the payment of certain alleged accounts payable of the Debtors' in the amount of $265,680.00 (the "**Accounts Payable**"). Alliance disputes that it owes any Accounts Payable to the Debtors;

c. Alliance claims that all current Cash Collateral on hand and collected by the Debtors and going forward must be turned over to Alliance under the current Cash Collateral Orders. The Debtors and Committee dispute Alliance's claim for turnover of all Cash Collateral; and[1]

d. Alliance disputes that the Debtors hold any other pre- or postpetition claim whatsoever against Alliance and, therefore, Alliance disputes the inclusion of its name or any alleged claim against Alliance on the list of preserved claims and potentially liable parties attached as Exhibit B to the Disclosure Statement ("**List of Preserved Claims**").

6. The Debtors dispute Alliance's claims and asserted security interest.

7. After good faith, arms' length negotiations, the Parties have reached an agreement to resolve the Disputes.

8. The Stipulation is in the best interest of creditors and the Debtors' bankruptcy estates because, among other benefits to the estates: (i) it liquidates and reduces the claims of the Debtors' primary lender; (ii) it resolves Alliance's asserted super-priority administrative expense claim against the Debtor; and (iii) allows the Debtors to retain $78,492.00 of asserted cash collateral.

9. The Stipulation terms and conditions are fair and reasonable because the Parties negotiated at arm's-length and otherwise acted in good faith.

---

[1] Unless otherwise noted herein, capitalized terms shall retain the meanings attributed to them in the Stipulation.

{00180220 2}　　3
Case 2:18-bk-12203-MCW    Doc 741    Filed 07/17/19    Entered 07/17/19 15:21:43    Desc
Main Document    Page 3 of 20

10. Upon approval by this Court, the Stipulation shall control between the Parties, which is summarized in pertinent part herein:

    A. With certain exception stated in the Stipulation, the Debtors shall pay to Alliance all Cash Collateral collected by the Debtors, and the Debtors shall retain the sum of $78,492.00 from the Cash Collateral.

    B. The Debtors will provide Alliance books and records in their possession to enable Alliance to collect its accounts receivable collateral.

    C. Alliance shall hold an allowed secured claim in the amount of $4,000,000 which shall be treated and satisfied as provided under Class 2 of the Plan, and an unsecured deficiency claim in the amount of $3,500,000 which shall be treated and satisfied as provided under Class 3 of the Plan.

    D. Alliance's super-priority claim arising under the *Stipulated Order Authorizing Further Limited Use of Cash Collateral* [Dkt. 346] shall be deemed satisfied.

## II. <u>LEGAL DISCUSSION</u>

Bankruptcy Rule 9019(a) permits a Bankruptcy Court to approve a settlement agreement that is in the best interests of the bankruptcy estate and is "fair and equitable" to the parties. See <u>Woodson v. Fireman's Fund Ins. Co. (In re Woodson)</u>, 839 F.2d 610, 620 (9th Cir. 1988); <u>In re A&C Properties</u>, 784 F.2d 1377, 1383 (9th Cir. 1986). In determining whether a settlement agreement satisfies this standard, a court applies the <u>Woodson</u> factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

See <u>In re Woodson</u>, 839 F.2d at 620.

In applying the <u>Woodson</u> factors, the court does not decide issues of law or fact raised in the controversies sought to be settled, or determine whether the settlement is the best possible outcome for the parties; the focus is on whether the settlement falls "below the lowest point in the zone of reasonableness." See <u>Newman v. Stein</u>, 464 F.2d 689, 698 (2d Cir. 1972); <u>see also</u> <u>In re</u>

1  Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (Bankr. E.D. Pa. 1992); In re Planned
2  Protective Services, Inc., 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); COLLIER ON BANKRUPTCY
3  ¶ 9019.02 (15th ed. rev).

Application of the Woodson factors supports approval of the Stipulation because it is in the best interest of the Debtors' bankruptcy estate and is fair and equitable to the Parties. Among other benefits to the estates, the settlement resolves and reduces the claims of Alliance, the Debtors' largest creditor, without resorting to costly and factually intense litigation. And, the Stipulation resolves Alliance's super priority administrative expense claim while allowing the Debtors to retain $78,492.00 from the Cash Collateral. The terms of the Stipulation are reasonable because the Parties negotiated at arm's length and the terms reflect the Parties' sound business judgment and recognition of the substantial costs of litigation. The Parties recognize that they have competing claims and acknowledge that if their claims were litigated, the Parties would incur considerable expense. Given these circumstances, approval of the Stipulation is in the best interest of creditors.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order approving the Stipulation upon use of a "negative notice" procedure in which interested parties have a twenty-one (21) day period to file objections.

DATED: July 17, 2019.

              **ALLEN BARNES & JONES, PLC**

              */s/ MAJ #27311*
              Michael A. Jones
              Philip J. Giles
              Cody D. Vandewerker
              David B. Nelson
              1850 N. Central Ave., Suite 1150
              Phoenix, AZ 85004

/ / /

/ / /

/ / /

/ / /

**E-FILED** on July 17, 2019 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case. **COPY** mailed and emailed the same date to:

| | |
|---|---|
| Office of the U.S. Trustee<br>230 N. First Avenue, Suite 204<br>Phoenix, AZ 85003-1706 | William J. Barret<br>Nathan Q. Rugg<br>BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP<br>200 West Madison Street, Suite 3900<br>Chicago, Illinois 60606<br>William.barret@bkfn.com<br>nathan.rugg@bkfn.com<br>*Attorneys for Genuine Parts Company* |

**COPY** e-mailed the same date to:

| | |
|---|---|
| Edward K. Bernatavicius<br>Office of the U.S. Trustee<br>230 N. First Ave., Ste 204<br>Phoenix, AZ 85003-1706<br>Edward.k.bernatavicius@usdoj.gov | Isaac M. Gabriel<br>James L. Ugalde<br>QUARLES & BRADY, LLP<br>Two N. Central Ave.<br>Phoenix, AZ 85004-2391<br>Isaac.gabriel@quarles.com<br>James.Ugalde@quarles.com<br>*Attorneys for BMO Harris Bank N.A.* |
| W. Kent Carter<br>GORDON REES SCULLY MANSUKHANI, LLP<br>One N. Franklin, Ste 800<br>Chicago, IL 60606<br>kentcarter@grsm.com<br>*Attorneys for VFS Leasing Co. and Volvo Financial Services, a division of VFS US LLC* | Mark A. Nickel<br>Gregory W. Seibt<br>GORDON REES SCULLY MANSUKHANI<br>111 W. Monroe St., Ste 1600<br>Phoenix, AZ 85003<br>mnickel@grsm.com<br>gseibt@grsm.com<br>*Attorneys for VFS Leasing Co. andVolvo Financial Services, a division of VFS US LLC* |
| Molly J. Kjartanson<br>QUARLES & BRADY, LLP<br>Two N. Central Ave.<br>Phoenix, AZ 85004-2391<br>molly.kjartanson@quarles.com<br>*Attorneys for TIAA, FSB* | Evan S. Goldstein<br>UPDIKE, KELLY, & SPELLACY, P.C.<br>100 Pearl St., 17th Floor<br>Hartford, CT 06103<br>egoldstein@uks.com<br>*Potential Attorneys for Capital and Leasing, Corp and Webster Capital* |
| Robert J. Miller<br>Khaled Tarazi<br>BRYAN CAVE LEIGHTON PAISNER<br>Two N. Central Ave., Ste 2100<br>Phoenix, AZ 85004-4406<br>rjmiller@bclplaw.com<br>khaled.tarazi@bclplaw.com<br>*Counsel for Wells Fargo Equipment Finance, Inc.* | Bradley D. Pack<br>ENGELMAN BERGER, P.C.<br>3636 N. Central Ave., Ste 700<br>Phoenix, AZ 85012<br>bdp@eblawyers.com<br>*Counsel for First Source Bank* |

| | | |
|---|---|---|
| 1 | John R. Clemency<br>Janel M. Glynn | Matthew H. Sloan<br>JENNINGS, HAUG & CUNNINGHAM, LLP |
| 2 | POLSINELLI<br>One E. Washington St., Ste. 1200 | 2800 N. Central Ave., Ste 1800<br>Phoenix, AZ 85004-1049 |
| 3 | Phoenix, AZ 85004<br>jglynn@polsinelli.com | MHS@JHC.Law<br>*Attorneys for River City Petroleum, Inc.* |
| 4 | *Attorneys for Western Alliance Bank* | |
| 5 | Cody J. Jess<br>Brittany M. Neel | Kenneth W. Kleppinger<br>BECKET & LEE LLP |
| 6 | SCHIAN WALKER, P.L.C.<br>1850 N. Central Ave., Ste 900 | 16 General Warren Blvd.<br>Malvern, PA 19355-0701 |
| 7 | Phoenix, AZ 85004-4531<br>bkdocket@biz.law | kkleppinger@becket-lee.com<br>*Attorneys for American Express Travel Related* |
| 8 | *Attorneys for James and Sharron Galusha*<br>*and the Jim and Sharron Galusha Revocable* | *Services Company, Inc.* |
| 9 |    *Trust Dated August 9, 2012* | |
| 10 | Alan R. Costello<br>COSTELLO LAW FIRM | S. Cary Forrester<br>John R. Worth |
| 11 | 2999 N. 44th St., Ste 515<br>Phoenix, AZ  85018 | Byron H. Forrester<br>FORRESTER & WORTH, PLLC |
| 12 | acostello@costello-law.com<br>*Attorneys for TCF Equipment Finance, Inc.* | 3636 N. Central Ave., Ste 700<br>Phoenix, AZ 85012 |
| 13 | | scf@forresterandworth.com<br>jrw@forresterandworth.com |
| 14 | | bhf@forresterandworth.com<br>*Attorneys for Pacific Western Bank* |
| 15 | Neal H. Bookspan<br>JABURG & WILK, P.C. | Elizabeth S. Fella<br>QUARLES & BRADY, LLP |
| 16 | 3200 N. Central Ave., Ste 2000<br>Phoenix, AZ 85012-2440 | Two N. Central Ave.<br>Phoenix, AZ 85004-2391 |
| 17 | nhb@jaburgwilk.com<br>*Attorneys for Hager Pacific Acquisitions,* | elizabeth.fella@quarles.com<br>*Attorneys Trans Lease, Inc* |
| 18 | *LLC* | |
| 19 | Peter Muthig<br>Maricopa County Attorney's Office | Anthony P. Cali<br>STINSON LEONARD STREET LLP |
| 20 | CIVIL SERVICES DIVISION<br>222 N. Central Ave., Ste 1100 | 1850 N. Central Ave., Ste 2100<br>Phoenix, AZ 85004-4584 |
| 21 | Phoenix, AZ 85004<br>muthigk@mcao.maricopa.gov | anthony.cali@stinson.com<br>*Attorneys for NC Industries, LLC* |
| 22 | *Attorneys for Maricopa County Treasurer* | |
| 23 | Anthony W. Austin<br>FENNEMORE CRAIG, P.C. | Signature Financial, LLC<br>c/o David N. Ingrassia |
| 24 | 2394 E. Camelback Rd., Ste. 600<br>Phoenix, AZ 85016 | DAVID N. INGRASSIA, P.C.<br>3961 E. Chandler Blvd., Ste 111-119 |
| 25 | aaustin@fclaw.com<br>*Attorneys for Creditor Key Equipment* | Phoenix, AZ 85048<br>david.ingrassia@cox.net |
| 26 | *Finance a division of KeyBank National*<br>*Association* | *Co-Counsel for Creditor Signature Financial,*<br>*LLC* |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1 | Robert M. Charles, Jr.<br>LEWIS ROCA ROTHGERBER CHRISTIE LLP<br>One S. Church, Ste 2000<br>Tucson, AZ 85701-1611<br>RCharles@LRRC.com<br>*Attorneys for Pacific Premier Bank* | Pamela K. Webster<br>BUCHALTER, A PROFESSIONAL CORPORATION<br>1000 Wilshire Blvd., Suite 1500<br>Los Angeles, CA 90017<br>pwebster@buchalter.com |
| 5 | Cristina Perez Hesano<br>BELLAH PEREZ, PLLC<br>5622 W. Glendale Ave.<br>Glendale, AZ 85301<br>cperez@bellahperez.com<br>*Attorneys for Creditor Eugene Bronson*<br>*Attorneys for Creditor Nineveh Holdings, LLC* | D. Lamar Hawkins<br>AIKEN SCHENK HAWKINS & RICCIARDI P.C.<br>2390 E. Camelback Rd., Suite 400<br>Phoenix, AZ 85016<br>dlh@ashrlaw.com<br>*Attorneys for Protective Insurance Company* |
| 10 | Joseph E. Cotterman<br>GALLAGHER & KENNEDY, PA<br>2575 E. Camelback Rd., Suite 1100<br>Phoenix, AZ 85016<br>joe.cotterman@gknet.com<br>*Attorneys for the Arizona Board of Regents, for and on behalf of Arizona State University* | Bradley A. Cosman<br>Jordan A. Kroop<br>PERKINS COIE LLP<br>2901 N. Central Ave., Suite 2000<br>Phoenix, AZ 85012<br>BCosman@perkinscoie.com<br>JKroop@perkinscoie.com<br>*Attorneys for Official Committee of Unsecured Creditors* |
| 15 | Wesley D. Ray<br>SACKS TIERNEY P.A.<br>4250 N. Drinkwater Blvd., 4th Floor<br>Scottsdale, AZ 85251-3693<br>Wesley.Ray@SacksTierney.com<br>*Attorneys for People's Capital and Leasing, Corp. and Webster Capital Finance, Inc.* | Katherine Anderson Sanchez<br>DICKINSON WRIGHT PLLC<br>1850 N. Central Ave., Suite 1400<br>Phoenix, AZ 85004<br>ksanchez@dickinsonwright.com<br>*Attorneys for Michelangelo Leasing, Inc.* |
| 19 | Randall P. Mroczynski<br>COOKSEY TOOLEN GAGE DUFFY & WOOG<br>535 Anton Boulevard, 10th Floor<br>Costa Mesa, CA 92626<br>Randym@cookseylaw.com<br>*Attorneys for Mercedes-Benz Financial Services USA LLC and Daimler Trust* | Douglas J. Pick<br>PICK & ZABICKI LLP<br>369 Lexington Ave., 12th Floor<br>New York, NY 10017<br>dpick@picklaw.net<br>*Attorneys for Lancer Insurance Company* |
| 23 | Jeremy M. Goodman<br>GOODMAN LAW PLLC<br>P.O. Box 90758<br>Phoenix, AZ 85066<br>jeremy@goodmanlawpllc.com<br>*Attorneys for Sun Trust Leasing Corporation* | Valerie K. Richmond<br>BURR FORMAN LLP<br>171 17th St. NW, Ste 1100<br>Atlanta, GA 30363<br>vrichmond@burr.com<br>*Attorneys for Sun Trust Leasing Corporation* |
| 27 | / / / | |
| 28 | / / / | |

| | | |
|---|---|---|
| 1 | Robert M. Charles, Jr.<br>LEWIS ROCA ROTHGERBER | Ajay Gupta<br>Chris S. Evans |
| 2 | CHRISTIE LLP<br>One South Church, Suite 2000 | GUPTA EVANS AND ASSOCIATES, PC<br>1620 5th Ave., Suite 650 |
| 3 | Tucson, AZ 85701-1611<br>RCharles@LRRC.com | San Diego, CA 92101<br>ag@socal.law |
| 4 | *Attorneys for Beltway Capital Management, LLC* | *Attorneys for LAZ Parking California, LLC* |
| 5 | | |
| 6 | Mark S. Bosco<br>Leonard J. McDonald | James B. Ball<br>BALL, SANTIN & McLERAN, PLC |
| 7 | TIFFANY & BOSCO P.A.<br>Camelback Esplanade II | 2999 N. 44th Street, Suite 500<br>Phoenix, AZ 85018 |
| 8 | 2525 E. Camelback Rd., 7th Floor<br>Phoenix, AZ 85016 | ball@bsmplc.com<br>*Attorney for Santander Consumer USA Inc.* |
|   | ljm@tblaw.com | *servicer for GEMB Lending, Inc. FKA* |
| 9 | *Attorneys for Bank of America, N.A.* | *E*Trade Consumer Finance Corporation as*<br>*assignee of Deutsche Financial Services* |

Brian Hunt
511 E. San Ysidro Blvd #211
San Ysidro, CA 92173
huntbrian8@gmail.com

*/s/ Misty Vasquez*

# Exhibit A

1  John R. Clemency (AZ Bar No. 009646)
   Janel M. Glynn (AZ Bar No. 025497)
2  **POLSINELLI**
   One E. Washington St., Ste. 1200
3  Phoenix, AZ 85004
   Telephone: 602.650.2000
4  jclemency@polsinelli.com
   jglynn@polsinelli.com
5  *Attorney for Western Alliance Bank*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SILVERADO STAGES INC., et al.,<br><br>Debtors.<br><br>This Filing Applies to:<br><br>☒ ALL DEBTORS<br>☐ SILVERADO STAGES INC.<br>☐ SILVERADO CHARTER SERVICES, LLC<br>☐ MICHELANGELO LEASING INC.<br>☐ SILVERADO STAGES SC, LLC<br>☐ SILVERADO STAGES CC, LLC<br>☐ SILVERADO STAGES NC, LLC<br>☐ SILVERADO STAGES NV, LLC<br>☐ SILVERADO STAGES AZ, LLC | Chapter 11 Proceedings<br><br>Case No. 2-18-bk-12203-MCW<br>(Jointly Administered)<br><br>Case No. 2:18-bk-12203-MCW<br>Case No. 2:18-bk-12205-DPC<br>Case No. 2:18-bk-12207-BKM<br>Case No. 2:18-bk-12209-MCW<br>Case No. 2:18-bk-12210-MCW<br>Case No. 2:18-bk-12213-EPB<br>Case No. 2:18-bk-12215-BKM<br>Case No. 2:18-bk-12218-EPB<br><br>**STIPULATION FOR THE ALLOWANCE AND TREATMENT OF THE SECURED AND UNSECURED CLAIMS OF WESTERN ALLIANCE BANK** |

This Stipulation ("Stipulation" or "Agreement") is made by and among the above-captioned Debtors Silverado Stages Inc., Silverado Charter Services, LLC, Michelangelo Leasing, Inc., Silverado Stages SC, LLC, Silverado Stages CC, LLC, Silverado Stages NC, LLC, Silverado Stages NV, LLC and Silverado Stages AZ, LLC (collectively with their bankruptcy estates, the "Debtors"), Debtors and Debtors-in-possession in the above

{00180370}
68511021.2
69247006.1

1

captioned Chapter 11 bankruptcy case (the "Case"), Western Alliance Bank ("Alliance"), secured creditor and party-in-interest, and the Official Committee of Unsecured Creditors ("Committee" and with Alliance and the Debtors, collectively, the "Parties" and each a "Party") appointed in the Case. For present and fair consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby jointly stipulate and agree as follows:

## RECITALS

A. On or about February 15, 2017, Alliance made two loans to Debtors Silverado Stages, Inc. ("Silverado"), Silverado Charter Services, LLC ("SCS"), Michelangelo Leasing Inc. ("Michelangelo" and with Silverado and SCS, and Silverado Stages AZ, LLC ("Silverado AZ"), collectively the "Borrowers") including a line of credit in the maximum amount of $5,000,000 (the "$5MM LOC") and a term loan in the original principal amount of $7,280,000 (the "$7.2MM Term Loan" and with the $5MM LOC, the "Loans"). Silverado AZ guaranteed repayment of the Loans.

B. Prepetition, Alliance also issued to or for the benefit of the Borrowers, four letters of credit (collectively, the "Letters of Credit") in the aggregate amount of $750,000.

C. On October 5, 2018 (the "Petition Date"), the Debtors filed eight Chapter 11 bankruptcy petitions and initiated the above-captioned bankruptcy Case.

D. As of the Petition Date, the Borrowers were indebted to Alliance in the aggregate amount of at least $8,268,655, which included $7,518,655 owed under the Loans plus $750,000 advanced by Alliance pursuant to the Letters of Credit.

E. Repayment of the Loans and Letters of Credit are secured by, among other things, a valid pre-bankruptcy first-position lien and security interest against, among other collateral: (i) substantially all of the Debtors' personal property including without limitation the bus collateral attached to the *Stipulated Order Authorizing Further Limited Use of Cash Collateral* (the "Cash Collateral Order") [Dk#346] at Ex. 1; and (ii) all of the Debtors' cash and accounts receivable, which constitutes cash collateral (the "Cash Collateral") as defined

in Code § 363(a) (collectively, the "Collateral").

F.  The Debtors previously agreed in orders regarding the Debtors' use of Cash Collateral to replacements liens related to such use of Cash Collateral.  All rights of all Parties were reserved regarding the value of Alliance's replacement liens and the amount of, if any, diminution of Alliance's collateral.  Alliance's replacement liens do not extend to: (i) the auction proceeds from the proceeds of the Debtors' unencumbered property conducted pursuant to the terms set forth in the *Order Granting Motion to Approve Auction Procedures* [Dkt. #489] of $325,931, together with any future proceeds from remaining unencumbered vehicles that the Debtors are working to sell; (ii) proceeds from the sale of Silverado Stages Inc.'s real property located at 1812 Main Avenue, Sacramento, California 95838; (iii) the judgment against MOH Management, LLC and others in favor of Michelangelo Leasing, Inc. entered in in the District Court for Clark County, Nevada, case no. A-12-668817-C; (iv) all causes of action under Chapter 5 of the Bankruptcy Code; and (v) customer deposits that the Debtors are holding for return to such customers.

G.  On or about December 29, 2018, the Debtors stipulated to relief from the automatic stay with respect to Alliance's Collateral under title 11 of the United States Code (the "Bankruptcy Code") pursuant to the *Stipulated Motion For Relief Of The Automatic Stay And Abandonment With Respect To Western Alliance Bank And Waiver Of 14 Day Stay Period* (the "Stipulated Stay Motion") [Dkt. #330].  The Stipulated Stay Motion was granted by the Court pursuant to the *Stipulated Order Granting Relief From Automatic Stay And Waiver Of 14 Day Stay Period* (the "Stay Relief Order") [Dkt. #411].

H.  The Debtors, Alliance, and the Committee stipulated to the Debtors' use of certain of Alliance's Cash Collateral pursuant to the terms of the Cash Collateral Order.

I.  Following the entry of the Stay Relief Order and an abandonment order, Alliance sold its Personal Property Collateral for an aggregate amount of $2,916,133.12 (the "Personal Property Sale Proceeds").

J.  Since the Petition Date and in accordance with the Cash Collateral Orders, the

{00180370}
6851\0212
69247006.1

3

Debtors have paid to Alliance postpetition cash in the amount of $1,444,547.00 ("Postpetition Cash Payments").

K. As of May 1, 2019, after applying the Personal Property Sale Proceeds and Postpetition Cash Payments to the balance owed under the Loans, Alliance holds a total deficiency claim in the amount of at least $4,165,560.89 (the "Deficiency Claim").

L. As of June 18, 2019, the Debtors' remaining accounts receivable totals approximately $1,128,452.37 (the "Remaining A/R") and the Debtors held approximately $156,394 that Alliance asserts is Cash Collateral.

M. Pursuant to the Cash Collateral Order, Alliance asserts a super-priority administrative expense in the amount of at least $25,000 (the "Super Priority Claim") in connection with the professional expenses incurred by the Committee on behalf of the Debtors' estates.

N. On or about April 2, 2019, the Debtors and the Committee jointly filed the *Joint Amended Chapter 11 Plan Dated April 2, 2019* (the "Plan") and *Joint Amended Disclosure Statement Dated April 2, 2019* (the "Disclosure Statement").

O. On or about May 1, 2019, the Debtors, Committee, and creditor Lancer Insurance Company ("Lancer"), agreed to the terms of a settlement related to the disputed lien and security interest of Lancer in a bus, resulting in the payment of $19,250 in cash to the Debtors upon the sale of the Lancer bus (the "Lancer Bus Sale Proceeds"). Alliance does not assert any claim or interest in the Lancer Bus Sale Proceeds.

P. Postpetition, the Committee, the Debtors and Alliance are involved in the following disputes (collectively, the "Disputes"):

    1. The Debtors and the Committee dispute Alliance's alleged perfected lien and security interest in certain 2009 VanHool motorcoach collateral ending in VIN #2334 and #2339 (the "VanHools"), including the rights of Alliance to the proceeds of the sale of the VanHools in the amount of $72,076 (the "Van Hool Sale Proceeds");

{00180370}
6851102I.2
69247006.1

4

2. The Debtors and the Committee assert a claim against Alliance for the payment of certain alleged accounts payable of the Debtors' in the amount of $265,680.00 (the "Accounts Payable"). Alliance disputes that it owes any Accounts Payable to the Debtors;

3. Alliance claims that all current Cash Collateral on hand and collected by the Debtors and going forward must be turned over to Alliance under the current Cash Collateral Orders. The Debtors and Committee dispute Alliance's claim for turnover of all Cash Collateral; and

4. Alliance disputes that the Debtors hold any other pre- or postpetition claim whatsoever against Alliance and, therefore, Alliance disputes the inclusion of its name or any alleged claim against Alliance on the list of preserved claims and potentially liable parties attached as Exhibit B to the Disclosure Statement ("List of Preserved Claims").

Q. The Parties are entering into this Stipulation to avoid costly litigation over the Disputes. If this Stipulation is approved by the Court in the Case, it will resolve all Disputes between the Parties in the Case.

R. The Parties will present this Stipulation for approval by the Bankruptcy Court. If approved by the Bankruptcy Court, the Stipulation will be binding on and will control all aspects of the debtor/creditor relationship between Alliance and the Debtors in the Case. This Stipulation will be effective as of the date (the "Effective Date") that the Bankruptcy Court enters an order approving the Stipulation.

**PROVISIONS**

In consideration of the foregoing and other good and valuable consideration, the Parties herby agree as follows:

1. **Incorporation of Recitals**. The Recitals above are incorporated into these Provisions without any difference or distinction between the two (2) segments.

2. **Payment of Cash Collateral To Alliance**. Within three (3) business days of the Effective Date, the Debtors shall pay to Alliance all Cash Collateral collected by the Debtors in the amount of at least $77,902, consisting of $80,267 (as of June 18, 2019) less $2,365 (related to the May and June 2019 invoices from Distinctive Systems, Inc. to the Debtors, and such amount shall be included in the Retained Cash, defined below) (the "Initial Cash Collateral Payment"), via wire transfer. Any and all additional Cash Collateral received and collected by the Debtors shall be turned over by the Debtors to Alliance within five (5) business days of the Debtors' receipt of any such payment. Notwithstanding the forgoing or anything in this Stipulation to the contrary, any proceeds from the Debtors' remaining unencumbered or partially encumbered vehicles shall not constitute Cash Collateral, shall be free and clear of any of Alliance's liens or encumbrances, and need not be turned over to Alliance. The Debtors shall provide Alliance with an updated report of all Cash Collateral received by the Debtors on or before the 15th and 30th of each month from the date this Agreement is executed by all Parties through the effective date of any plan of reorganization confirmed by the Court, and upon such other reasonable request of Alliance. Notwithstanding anything in this Stipulation to the contrary, on the Effective Date, the Debtors shall retain the sum of $78,492 (the "Retained Cash") from the Cash Collateral, and the Retained Cash shall not constitute Cash Collateral and shall be free and clear of any of Alliance's liens or encumbrances.

3. **Turnover of Books and Records to Collect Outstanding Accounts Receivable**. Within three (3) business days of the execution of this Agreement by all parties, the Debtors shall turnover to Alliance all documents and records in the possession of the Debtors supporting any accounts receivable (collectively, the "Outstanding A/R") owed to the Debtors as of the date of this Agreement, including without limitation, detailed accounts receivable aging reports (reflecting invoice date, date of service, and invoice amounts), all invoices, customer contact information (including address, phone number, contact email), copies of all contracts supporting invoices and the Outstanding A/R,

passwords to all programs or software containing information supporting the Outstanding A/R, including without limitation the Coach Manager software via Distinctive Systems, Inc. ("Coach Manager").  Other than as set forth in this Agreement, Alliance shall not assume any payment or other obligations of the Debtors with respect to Coach Manager prior to this Agreement.  If any person or entity who owes any Outstanding A/R has disputed any amount owed or otherwise asserted an offset or recoupment, the Debtors shall also provide to Alliance all documents and communications related to such dispute.  The foregoing documents and information shall be delivered to Alliance on a flash drive or electronically via email.  The Debtors individually and through their Chief Restructuring Officer, shall cooperate with Alliance and provide information and execute such other documents as are reasonably necessary to transfer the Outstanding A/R and needed for the collection of outstanding A/R by Alliance.   The Committee shall provide to Alliance access to all of the Debtors' books and records in its possession and Alliance may copy any books and records at Alliance's expense.

4. **Allowed Claim of Alliance.**  Alliance shall hold an allowed secured claim in the Case under Bankruptcy Code § 502 in the amount of $4,000,000 which shall be treated and satisfied by the Debtors as provided under Class 2 of the Plan, regarding the Allowed Secured Claim of Alliance.  Alliance shall also hold an allowed unsecured deficiency claim against the Debtors in the amount of $3,500,000 which shall be treated and satisfied by the Debtors as provided under Class 3 of the Plan, regarding the Allowed Claims of General Unsecured Creditors.  Upon approval of this Agreement by the Bankruptcy Court, Alliance will vote in favor of the Plan.

5. **Bankruptcy Court Approval**.  Within three (3) business days of execution of this Agreement, the Debtors shall file a motion to approve this Agreement pursuant to Bankruptcy Rule 9019 (the "Rule 9019 Motion").  Alliance and the Committee shall cooperate and support the Rule 9019 Motion.  Once approved by the Bankruptcy Court, the terms and conditions of this Agreement will govern and control the treatment of Alliance's

claims in this Case and under any plan of reorganization confirmed in this Case, and despite conversion of this case from a Chapter 11 proceeding to a Chapter 7 Proceeding. If after reasonable and good faith efforts by the Parties, the Bankruptcy Court will not approve it, then this Agreement shall be null and void, have no further effect, and may not be relied upon for any purpose.

6. **Release and Waiver of Claims.** Subject to and conditioned upon the Bankruptcy Court's approval of this Agreement, and in consideration of the provisions described in this Agreement and other good and valuable consideration, and except for the rights and any claims expressly set forth in or arising under this Agreement, upon the occurrence of the Effective Date, the Debtors and Committee, on the one side, and Alliance, on the other side, release and waive all rights, title, interest, claims and causes of action against one another, whether known or unknown, whether arising prepetition or postpetition, including without limitation the Disputes and any and all claims or causes of action related to or arising out of the Loans, Letters of Credit, Collateral, Cash Collateral, Van Hools, the Van Hool Sale Proceeds, Accounts Payable, Cash Collateral Order, Stipulated Stay Motion, Stay Relief Order, Postpetition Cash Payments, Personal Property Sale Proceeds, or otherwise referenced in the Plan, Disclosure Statement, or the List of Preserved Claims.

7. **Satisfaction of Superior Priority Claim**. Subject to and conditioned upon the Bankruptcy Court's approval of this Agreement, and in consideration of the provisions described in this Agreement and other good and valuable consideration, and except for the rights and any claims expressly set forth in or arising under this Agreement, upon the occurrence of the Effective Date, the Super Priority Claim of Alliance against the Debtors shall be deemed satisfied.

8. **Cooperation of the Parties**. The Parties will do such things and execute such documents as are necessary and appropriate to carry out the terms of this Agreement,

including without limitation executing any documents necessary to transfer the Coach Manger software to Alliance

9. **Execution of Agreement**. This Agreement may be executed in counterparts. Electronic signatures by the Parties will be accepted as original signatures.

10. **Governing Law**. This Stipulation shall be construed in accordance with, and governed by, the laws of the State of Arizona without regard to conflict of laws principles. The Parties consent to the Bankruptcy Court's constitutional authority and exclusive jurisdiction to resolve any dispute related to this Stipulation, whether such dispute sounds in contract or tort, and any right to have any dispute resolved or tried before a jury is irrevocably waived.

11. **Entire Agreement**. Except for the other agreements the Parties have entered into or contemplate entering into as part of this Stipulation, this Stipulation sets forth the entire agreement and understanding of the Parties with respect to the transactions contemplated hereby, and supersedes all prior agreements, arrangements, and understandings relating to the subject matter hereof or thereof. This Stipulation may not be amended or modified, in whole or in part, except by an agreement in writing signed by each of the Parties hereto. All of the terms, representations, and warranties of this Stipulation shall be binding upon, inure to the benefit of, and be enforceable by, the Parties hereto and their respective successors, heirs, assigns, legatees, executors, and other legal representatives.

12. **Other Documents**. The Parties shall execute any documents or perform any actions reasonably necessary to consummate the terms of this Stipulation.

13. **Further Assurances**. The Parties shall reasonably cooperate with each other to implement the terms and conditions of this Stipulation and shall encourage and support third-parties to do the same.

/ / /

/ / /

{00180370}
6851102 1 2
69247006.1

9

Case 2:18-bk-12203-MCW    Doc 741    Filed 07/17/19    Entered 07/17/19 15:21:43    Desc
Main Document    Page 19 of 20

RESPECTFULLY SUBMITTED this 17th day of June, 2019.

**POLSINELLI, P.C.**

By: /s/*Janel M. Glynn*
    John R. Clemency
    Janel M. Glynn
*Attorneys for Western Alliance Bank*


**ALLEN BARNES & JONES, PLC**

By: /s/ *Michael A. Jones*
Michael A. Jones
1850 N. Central Ave., Suite 1150
Phoenix, AZ 85004
*Attorneys for the Debtors*


**PERKINS COIE LLP**

By: /s/ *Bradley A. Cosman*
Bradley A. Cosman
Jordan A. Kroop
2901 N. Central Ave., Suite 2000
Phoenix, AZ 85012
*Counsel for Official Committee of Unsecured Creditors*